EASTROADS, L.L.C., AND JACQUELINE A. SULLIVAN,
TRUSTEE OF THE JACQUELINE A. SULLIVAN LIVING TRUST,
DATED APRIL 29, 1994, APPELLANTS, V.
OMAHA ZONING BOARD OF APPEALS ET AL., APPELLEES.
628 N.W.2d 677

Filed June 15, 2001.   No. S-99-586.

Ralph A. Froehlich for appellants.

Alan M. Thelen, Assistant Omaha City Attorney, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

The Omaha Zoning Board of Appeals (board) approved a variance in reference to a parcel of land located north of Interstate 80 between 15th and 13th Streets in Omaha, Nebraska. Eastroads, L.L.C., and the Jacqueline A. Sullivan Trust (collectively Eastroads) appealed, and the district court affirmed the board's decision. Eastroads then appealed to the Nebraska Court of Appeals, which reversed the judgment of the district court, finding that the decision of the board granting the variance was illegal. The board petitioned for further review, which this court granted.

## FACTUAL BACKGROUND

On April 3, 1995, TCLA, Inc., submitted an area variance request to the board regarding a parcel of land in Omaha,

Nebraska, commonly referred to as the "Thirteenth Street Development." The development is zoned "CC-Community Commercial District" (CC), while the adjacent land to the north and south is zoned "R-5-Urban Family Residential District" (R-5). The development is bounded on the east by 13th Street and on the west by 15th Street. The Omaha Municipal Code requires that a 30-foot bufferyard consisting of landscaped vegetation be maintained on CC-zoned land abutting R-5 land.

TCLA requested that the board waive the 30-foot bufferyard requirement on four vacant lots located generally in the northern half of the development. Of these four lots, three are adjacent to the development, while one lot is located within the development, bounded on all four sides by CC-zoned land. These four lots are owned by Eastroads.

At the first hearing before the board on April 20, 1995, TCLA presented evidence to show why the variance was needed in order to develop the property. TCLA first pointed out that the irregular shape of the development's property line in the north section, due to the four lots owned by Eastroads, created a practical difficulty in that the 30-foot bufferyard was increased by the irregular boundary. Second, TCLA explained that the development contained an old rubble fill site located primarily in the center of the land. This rubble fill area was unsuitable for supporting commercial or residential buildings, and removing the fill from the land was impracticable. Thus, because of the rubble fill, any buildings in the development had to be placed on the perimeter of the development. Finally, TCLA produced evidence that due to a state-owned right-of-way created as a result of an on ramp to Interstate 80 along 13th Street, the only point where a road into the development from 13th Street could be located was at the north end. These factors made the amount of available land at the north perimeter especially crucial for the development. TCLA asserted that the rubble fill, the shape of the parcel, and the state's right-of-way created practical difficulties such that a variance was necessary to make development feasible.

Eastroads then produced its evidence in opposition to the variance. At the conclusion of the hearing, the board granted the variance. Eastroads appealed the board's decision to the Douglas County District Court. The district court, determining

that Eastroads was denied the opportunity to present all of its evidence to the board, remanded for a new hearing.

The second hearing before the board was held on April 18, 1996. TCLA again presented its evidence regarding the rubble fill, the irregular shape of the parcel, and the state's right-of-way. Regarding TCLA's intentions for the development, an engineer testifying on behalf of TCLA stated:

> We [TCLA] are requesting that the [variance] be granted today in order to free up that buildable area adjacent to these undeveloped lots for purposes of landscaping, as was mentioned, parking areas, driveways and buildings — any buildings placed on these properties would meet the requirements of the zoning ordinance for building setbacks.

Another witness testifying for TCLA stated to the board, "[W]e need the [variance] in order to develop the property. But no, there is no intent on building buildings with a zero setback, which wouldn't be allowed by current zoning regulations."

Eastroads again appeared in opposition to the variance and produced for the board's consideration plans to build "domed homes" on the four vacant lots. Eastroads' president stated:

> I'm asking that you deny the request of this [variance]. This is possible violations [sic] of the environmental laws and future environmental liability for the City of Omaha. . . .
>
> . . . .
> . . . TCLA is the intruder into the residential area. TCLA . . . will devalue the lots . . . it will harm future persons living in the dome homes. They will violate common law air and sun rights . . . . They have not secured all needed permits . . . . They will harm surrounding residential homes when and if they are allowed to dig up the dump. . . .
>
> . . . It is not the proper development for the area at the present time and the dome home development will help the area . . . .

In considering the variance application, the board discussed with Eastroads the building setback requirements on CC-zoned land. These requirements state that CC-zoned land has a 25-foot setback on the front yard, a 10-foot setback on parking lots, a 15-foot setback on the street-side yard, and a zero setback on the interior-side yard. As one member of the board stated, the over-

all regulations of the zoning code would preclude TCLA from building "right on top" of Eastroads, even if the 30-foot buffer-yard was waived. The board then voted to grant the variance.

Eastroads again appealed to the district court, and the board moved for summary judgment. After a hearing, the district court granted the board's motion and dismissed Eastroads' claim. Eastroads then appealed to the Court of Appeals. The Court of Appeals reversed, and remanded, finding that the district court did not have authority under Neb. Rev. Stat. § 14-414 (Reissue 1997) to grant summary judgment. *Eastroads v. Omaha Zoning Bd. of Appeals*, 7 Neb. App. 951, 587 N.W.2d 413 (1998).

Upon remand, the district court held an evidentiary hearing on April 23, 1999. At this hearing, Eastroads presented additional evidence for the court's consideration in determining whether the decision to grant the variance was illegal. See *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 660, 663-64, 515 N.W.2d 390, 393 (1994) (" '[i]n deciding whether a board's decision is supported by the evidence, the district court shall consider any additional evidence it receives' ").

The additional evidence revealed the following pertinent facts regarding the development: The rubble fill was created between approximately 1950 and 1970 when the area was used for depositing construction waste. In 1988, the board granted a request by Thirteenth Street Associates, Inc., a prior owner, to rezone the development to CC. Thirteenth Street Associates later sold the development to Okahoma, Inc., which in turn was purchased and merged with TCLA on April 19, 1990. After TCLA purchased the property in 1990, the state acquired a right-of-way along the southeast edge of the development. Furthermore, at the hearing before the district court, the parties also stipulated that during the course of the present litigation and after the board granted the variance, a restaurant had been built on one lot at the northeast corner of the development.

On April 23, 1999, the trial court issued its ruling. The trial court found that the decision of the board granting the ordinance was not illegal, arbitrary, or capricious. The court found that the board's decision was supported by the following facts:

> [N]umber one . . . the rubble fill on the property is on a majority of this TCLA property; secondly, the Zoning

> Board considered, and correctly, in my opinion, took into account the state controlled [right-of-way] which must begin at the north end of the property and this, in effect, forecloses the possibility of any reasonable development in this area; third, the irregular boundary between the TCLA property and the Plaintiffs' R-5 property. The irregular boundaries which are part of the evidence in this case increase the required buffer yard and, once again, this forecloses the possibility of any reasonable development.

The court also found that the appeal was moot with respect to the lot upon which the restaurant had been built.

Eastroads again appealed to the Court of Appeals contending, among other things, that the variance was illegal because the asserted difficulties justifying the variance were self-created conditions caused by TCLA. The Court of Appeals agreed, relying upon our decision in *Frank v. Russell*, 160 Neb. 354, 70 N.W.2d 306 (1955), and concluded that the board acted illegally in granting the variance. *Eastroads v. Omaha Zoning Bd. of Appeals*, 9 Neb. App. 767, 619 N.W.2d 618 (2000). The Court of Appeals also reversed the district court's determination that the appeal was in part moot. The board then petitioned for further review, which we granted.

## ASSIGNMENTS OF ERROR

The board asserts, rephrased, that the Court of Appeals erred in (1) reversing the district court's finding of mootness and (2) interpreting *Frank v. Russell, supra*, to determine the variance was illegal.

## STANDARD OF REVIEW

■ On appeal, a district court may disturb the decision of a zoning appeals board only when "the decision was illegal or is not supported by the evidence and is thus arbitrary, unreasonable, or clearly wrong." *Fitzke v. City of Hastings*, 255 Neb. 46, 56, 582 N.W.2d 301, 309 (1998).

■ In reviewing a decision of the district court regarding a zoning appeal, the standard of review is whether the district court "abused its discretion or made an error of law." *Id.* at 55, 582 N.W.2d at 308. Where competent evidence supports the district

court's factual findings, an appellate court will not substitute its factual findings for those of the district court. *Id.*

## ANALYSIS

### MOOTNESS

■ The board first asserts the Court of Appeals erred in reversing the trial court's determination that with respect to the lot where the restaurant had been built, the present appeal was moot. A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Prucha v. Kahlandt*, 260 Neb. 366, 618 N.W.2d 399 (2000).

■ However, in the context of a variance, an appeal is not rendered moot by the fact that construction has taken place in reliance upon the challenged variance during the appeal process. *Bowman v. City of York*, 240 Neb. 201, 482 N.W.2d 537 (1992). Thus, the fact that a restaurant has been built on the development does not render any part of this appeal moot. The board's first assignment of error is without merit.

### AREA VARIANCE

The board next assigns as error the Court of Appeals' determination that the board's decision granting the variance was illegal under *Frank v. Russell*, 160 Neb. 354, 70 N.W.2d 306 (1955). The board argues that *Frank* is inapplicable to a variance granted under Neb. Rev. Stat. § 14-411 (Reissue 1997) in that *Frank* was decided under Neb. Rev. Stat. § 19-910 (Reissue 1997) and the two statutes as currently written are not analogous. Section 19-910 defines the authority of boards of adjustment to grant a variance in cities of the first and second class and villages. Section 14-411 defines the authority of zoning boards of appeal to grant a variance in cities of the metropolitan class, such as Omaha.

However, the current version of § 19-910 was not in effect at the time *Frank v. Russell, supra,* was decided in 1955. The version of § 19-910 in effect in 1955, § 19-910 (Reissue 1954), stated in pertinent part:

> The board of adjustment shall . . . authorize upon appeal in specific cases such variance from the terms of the [zoning] ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

This language is analogous to that found in § 14-411. Section 14-411, which has not been amended since 1929, states in pertinent part:

> Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of such [zoning] ordinance, the board of appeals shall have the power in passing upon appeals, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures or the use of land, so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done.

Both ordinances allowed the respective decisionmakers the general authority to grant a variance from the "strict letter" or "literal enforcement" of a zoning ordinance when "unnecessary hardships" or "practical difficulties" exist, so long as the "spirit of the ordinance" was upheld and "substantial justice" done. § 14-411; § 19-910 (Reissue 1954). Due to the similarity between §§ 14-411 and 19-910 when *Frank* was decided, *Frank* is applicable to the issues presented in this appeal. Accordingly, we turn to a consideration of the self-created conditions rule enunciated in *Frank*.

In *Frank v. Russell, supra*, the applicants sought an area variance after commencing construction of a building in violation of the local zoning code. The applicants' building was placed 27 feet from the front lot line. During construction, nearby landowners brought an injunction to halt construction, asserting the local zoning ordinances required that the building be placed 40 feet from the front lot line. After the injunction was granted, the applicants petitioned the local board of adjustment for a variance under § 19-910 to allow them to complete the structure with a 27-foot setback. The board of adjustment granted the variance.

On appeal, this court reversed, finding that the undue hardship asserted by the applicants, having to tear down a partially completed building, was a self-created condition because the applicants began building the structure in violation of existing zoning ordinances. As such, the board acted illegally in granting the variance.

In *Frank v. Russell*, 160 Neb. 354, 361-62, 70 N.W.2d 306, 311 (1955), we stated that " '[o]rdinarily, a claim of unnecessary hardship cannot be based upon conditions created by the owner or applicant.' " Quoting Annot., 168 A.L.R. 13 (1947). The Court of Appeals, in applying this proposition, determined that TCLA's knowing purchase of CC-zoned property containing a rubble fill necessitated the conclusion that the practical difficulties asserted in this case were a self-created condition. The Court of Appeals concluded that this self-created condition rendered the board's decision illegal. Assuming without deciding that the Court of Appeals was correct in its determination, there was an additional finding made by the district court regarding the state's right-of-way which the Court of Appeals failed to consider.

In affirming the board's decision, the district court found that the state's right-of-way running alongside the southeast edge of the development created a practical difficulty which, if not ameliorated, "forecloses the possibility of any reasonable development in this area." Eastroads did not assert, either in its brief or at oral argument, that the state's right-of-way was a self-created condition. The record is uncontroverted that the right-of-way was created by the state after TCLA acquired the property. The record is further devoid of any evidence showing that at the time TCLA acquired the property, it had any knowledge that such a right-of-way would be created in the future. Due to the limitations placed on the development by the state's right-of-way, the only access to the property along 13th Street is in the northern section. At the 1995 hearing, a witness for TCLA testified that due to the right-of-way, it would not be possible to place a road in the north section of the development without the variance.

Upon review, where competent evidence supports the district court's factual findings, an appellate court will not substitute its factual findings for those of the district court. *Fitzke v. City of*

*Hastings*, 255 Neb. 46, 582 N.W.2d 301 (1998). In reviewing the district court's decision, the question is whether the district court abused its discretion or made an error of law. *Id.* There is competent evidence in the record to support the district court's finding that the state's right-of-way created a situation where strictly applying the 30-foot bufferyard requirement with respect to the four vacant lots would foreclose the possibility of reasonable development. This is a significant factor supporting the board's decision which the Court of Appeals failed to consider.

The facts of this case as applied to the right-of-way distinguish it from *Frank v. Russell*, 160 Neb. 354, 70 N.W.2d 306 (1955). In *Frank*, the sole difficulty asserted by the applicants was having to tear down a partially completed building which the applicants themselves placed upon the land in violation of the local zoning ordinances. We stated that "[i]t would certainly be unreasonable to allow one to create his own hardship and difficulty and take advantage of it to the prejudice of innocent parties." *Id.* at 361, 70 N.W.2d at 311. In the present case, the state's right-of-way is simply not a condition created by the "owner or applicant," TCLA. *Id.* at 362, 70 N.W.2d at 311. The district court found that the state's right-of-way created a practical difficulty in the strict application of the zoning code in this case. This finding by the district court was supported by competent evidence. As such, its determination was neither an abuse of discretion nor an error of law.

Having determined that the state's right-of-way was not a self-created condition, we next consider the second proposition from *Frank v. Russell, supra*, which the Court of Appeals relied upon in determining that the variance was illegal. The second proposition states, " 'The claim of unnecessary hardship as a ground for a variance is not ordinarily available to one who purchased the premises after the enactment of the regulation in question.' " *Id.* at 362, 70 N.W.2d at 312, quoting Annot., 168 A.L.R. 13 (1947).

This dicta in *Frank v. Russell, supra*, however, has never been applied by this court as an absolute bar to granting a variance in the cases succeeding *Frank*. In fact, the use of the word "ordinarily" in *Frank* signifies that there may be occasion to vary the application of this rule. While the zoning restrictions in place at

the time TCLA purchased the property may be considered by the board in deciding whether the variance should be granted, such restrictions do not remove the board's discretion, in an appropriate case, to relax the "strict letter" of the zoning code by granting a variance. § 14-411.

Our review in this case is narrowly limited to whether the trial court abused its discretion or committed an error of law in affirming the board's decision granting the variance. As noted in *Bowman v. City of York*, 240 Neb. 201, 210, 482 N.W.2d 537, 544 (1992), administrative boards such as the board of zoning appeals provide

> "expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the legislature, to make rules and enforce them in fashioning solutions to very complex problems. Thus, their decisions are not to be taken lightly or minimized by the judiciary."

We find no abuse of discretion or error of law committed by the trial court in affirming the decision of the board. We conclude, based on the foregoing reasons, that the Court of Appeals erred in reversing the district court's decision.

## CONCLUSION

The Court of Appeals' determination that the appeal is not moot is affirmed. The Court of Appeals' determination that the board acted illegally in granting the variance is reversed. Accordingly, we affirm in part, and in part reverse and remand with directions to the Court of Appeals to enter judgment consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

MCCORMACK, J., not participating.