764 N.W.2d 130 (2009)
17 Neb. App. 469
Mark Owen ROUSSEAU, Appellant,
v.
ZONING BOARD OF APPEALS OF OMAHA, Nebraska, and Elena Kerwin, Appellees.
No. A-08-453.
Court of Appeals of Nebraska.
March 24, 2009.
*131 Marion F. Pruss, Omaha, for appellant.
Alan M. Thelen, Deputy Omaha City Attorney, for appellee Zoning Board of Appeals of Omaha.
Charles M. Bressman, Jr., of Anderson & Bressman Law Firm, P.C., L.L.O., Omaha, for appellee Elena Kerwin.
CARLSON, MOORE, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
Mark Owen Rousseau appeals from the judgment of the district court after a bench trial denying his request to reverse the decision of the Omaha Zoning Board of Appeals (Board). The Board granted Elena Kerwin three zoning variances, one of which amounts to at most a matter of inches. We conclude that the density of the existing development in the area where the lot in issue is located is sufficient to support the district court's determination that the additional variances were appropriate because of undue hardship.

BACKGROUND
In 2005, Kerwin purchased a lot located in a portion of Omaha, Nebraska, known as Dundee. Dundee is a residential area originally developed at the end of the 19th century. At the time Kerwin purchased the lot, it was vacant. A fire had destroyed the structure previously standing on the property.
After initially making plans to build 11 total condominiums on the property, Kerwin decided to build a four-story, four-unit condominium that included an elevator. *132 Kerwin wanted to design a building in the old "federal" style with an interior that would look like a condominium found "in Chicago or New York." Kerwin designed this particular building to fit the needs of professionals coming from other parts of the country, who she believed did not generally like the housing in Omaha that was currently available.
Kerwin made changes in the project, working with an Omaha city planner to attempt to make the building comply with the Omaha Municipal Code. Kerwin had the project redesigned 11 times in an attempt to get it to comply with zoning regulations before deciding to seek a waiver. Kerwin decided that it would be impossible to accomplish her architectural goals and comply with the existing zoning ordinances and filed an appeal with the Board to seek variances. Her application stated that her grounds for seeking the variances were as follows:
Waiver of variance to front yard setback ([Omaha Mun.Code, ch. 55, art. VI, §] 55-246 [(1980)]) from 35 [feet] to 20 [feet] to bring proposed structure into alignment with adjacent buildings which average 19.33 [feet] on the north side of Davenport Street. Waiver of off-street parking requirement ([Omaha Mun. Code, ch. 55, art. XIV, §]55-734 [(2001)]) from 1.5 to 1.0 [parking stall] per unit (6 to 4 stalls total) due to innercity location with good access to existing bus routes and availability of traditional on-street parking locations[.]
On May 17, 2007, the Board heard Kerwin's application for variances. In addition to the two variances which Kerwin had initially requested on her application, the court considered a third variance that would allow Kerwin to decrease her side yard setback from 12 feet to 10 feet. Although the application did not specifically request this variance, the notice provided to the interested parties stated this and Kerwin's building plans as submitted to the Board indicated that this variance would be necessary. At the hearing, an attorney appeared on behalf of Rousseau, who owned the property directly west of Kerwin's lot, to oppose the application. At the conclusion of the hearing, the Board granted all three proposed variances.
Rousseau then filed a complaint in district court to seek a reversal of the Board's decision as to all three variances. On March 3, 2008, the parties tried this matter before the district court.
At trial, Kerwin admitted that it was possible to build a multiple-family residential building on the lot and still comply with zoning regulations. Nevertheless, Kerwin contended that the zoning regulations prohibited her from building the particular style of building that she desired to build. Kerwin adduced evidence that the zoning regulations from which she sought a variance were designed to control growth in more suburban areas.
Rousseau testified that he believed Kerwin's proposed building plans would decrease the value of his property. He also stated that Kerwin's failure to provide parking as per the zoning regulations would be problematic because there is limited parking available on the street.
The district court upheld the Board's decision. The court found that the zoning regulations permitted Kerwin's proposed front yard setback without a variance. The court also found that the density of the neighborhood was a hardship that justified the side yard setback and parking space variances.
Rousseau timely appeals.

ASSIGNMENT OF ERROR
Rousseau's sole assignment of error is that the district court erred in determining *133 that any evidence existed to support the Board's finding that there were practical difficulties or unnecessary hardships justifying a waiver of Omaha's existing zoning ordinances.

STANDARD OF REVIEW
On appeal, a district court may disturb the decision of a zoning appeals board only when the decision was illegal or is not supported by the evidence and is thus arbitrary, unreasonable, or clearly wrong. Goodman v. City of Omaha, 274 Neb. 539, 742 N.W.2d 26 (2007). In reviewing a decision of the district court regarding a zoning appeal, the standard of review is whether the district court abused its discretion or made an error of law. Eastroads v. Omaha Zoning Bd. of Appeals, 261 Neb. 969, 628 N.W.2d 677 (2001). Where competent evidence supports the district court's factual findings, an appellate court will not substitute its factual findings for those of the district court. Id.

ANALYSIS
Rousseau argues that Kerwin was unable to demonstrate sufficient hardship to justify the variances. Neb.Rev.Stat. § 14-411 (Reissue 2007) supplies the applicable standard governing the Board's power to grant variances from zoning ordinances. The applicable portion of § 14-411 states as follows:
Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of such ordinance, the board of appeals shall have the power in passing upon appeals, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures or the use of land, so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done.
Neb.Rev.Stat. § 14-413 (Reissue 2007) provides for an appeal from the Board's decision to the district court on the ground that the decision is illegal, and states in pertinent part as follows:
Any person or persons ... aggrieved by any decision of the board of appeals, or any officer, department, board or bureau of the municipality, may present to the district court a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of such illegality.

Front Yard Setback "Variance."
First, it is clear that the front yard setback variance which Kerwin requested is at most a minor deviation from the requirements of the applicable ordinances. Kerwin requested a front yard setback of 20 feet. Omaha Mun.Code, ch. 55, art. VI, § 55-246 (1980), provides that in an R7 district, the minimum front yard setback is 35 feet. Thus, at first glance, it appears that Kerwin was requesting a substantial variance.
However, where existing nearby buildings have a lesser setback than the one required by current standards, the code provides an adjustment to the otherwise applicable setback. Omaha Mun.Code, ch. 55, art. XVI, § 55-782(c) (1995), provides an explicit exception to the regular setback requirement and specifies three alternative substitutes, one of which is pertinent to the instant case. Section 55-782(c) states:

Setback adjustment for developed residential blocks. These provisions apply if 75 percent or more of the lots on a residentially zoned blockface are developed and if 50 percent or more of the buildings on that blockface have front yard setbacks less than those required for the specific district.

*134 (1) If a building is to be built on a parcel of land within 100 feet of existing buildings on both sides, the minimum front yard shall be the mean setbacks of the adjacent buildings.
(2) If a building is to be built on a parcel of land within 100 feet of an existing building on one side only, the minimum front yard shall be the setback of the adjacent building.
(3) If a building is to be built on a parcel of land not within 100 feet of an existing building on either side, then the minimum front yard shall be the mean setback of all existing buildings on the blockface.
(Emphasis in original.) The evidence clearly shows that the 75- and 50-percent criteria of § 55-782(c) were satisfied. The evidence also shows that Kerwin's building was to be built on a parcel of land within 100 feet of existing buildings on both sides. Thus, the exception provided by § 55-782(c)(1) applies to the instant case, and the required setback is determined by the average setback of the adjacent buildings. The Board granted a "variance" of the front yard setback.
The district court's order indicated that no actual variance was required, but the court apparently relied upon the wrong exception. In so doing, the court stated that "the average front yard setback for the nine structures on the north side of Davenport [Street] is 19.33 [feet]." The court apparently reasoned that Kerwin's proposed 20-foot setback exceeded the 19.33-foot-average setback of all buildings on the block. This would have been correct under § 55-782(c)(3), if Kerwin's lot was not within 100 feet of an existing building on either side. However, the evidence is clear and undisputed that Kerwin's lot was bordered on both sides by buildings within 100 feet. Thus, § 55-782(c)(1) applies, and the exception looks only to the average setback of the immediately adjoining structures.
The evidence is not entirely clear that any variance of the front yard setback was required. Omaha's city planning department seemed to treat the proposed setback as being in conformity with the applicable ordinance prior to the hearing before the Board. At the trial before the district court, Robert Peters, an architect who had retired in 2005 from his post as director of Omaha's city planning department, testified that the range of setbacks along the applicable street was 15 to 25 feet. Kerwin also introduced an exhibit which shows the structures on each side of Kerwin's lot having respective setbacks of 15 and 25 feet. If these distances were precisely correct, the Omaha code setback, applying § 55-782(c)(1), would be 20 feet, and no variance would have been required. However, this exhibit was generated by a computer-based tool utilizing aerial photographs, and the exhibit sets forth a disclaimer stating that "accuracy is not guaranteed" and that the document "should not be substituted for a ... survey."
If a variance of the front yard setback is required, it amounts only to a matter of inches. Another exhibit showed the existing setbacks of the adjoining buildings as 15.40 feet and 24.90 feet, respectively. Under § 55-782(c)(1), the average of those setbacks, or 20.15 feet, would constitute the code requirement, and Kerwin's proposed setback would be approximately 1.8 inches less than the requirement. As Peters explained at the trial, the request for a variance of the front yard setback was made "because we get into decimal points" and because "it becomes a requirement on the owner to spend 5 to 500 to $1000 for a survey to justify the placement of that setback when common sense and looking at the existing setbacks would say ... that you place it in the midpoint."
*135 The district court found that no variance was required, but relied on an incorrect understanding of the Omaha code. However, the Board's decision to grant this insignificant variance was supported by the evidence and was neither arbitrary, unreasonable, nor clearly wrong. A proper result will not be reversed merely because it was reached for the wrong reason. In re Trust Created by Cease, 267 Neb. 753, 677 N.W.2d 495 (2004).

Side Yard and Parking Variances.
Rousseau also argues that the district court erred in granting Kerwin variances which permitted her to decrease the side yard setback from 12 feet to 10 feet and decrease the number of on-property parking spaces from six to four. Section 55-246 requires that multiple-family dwellings in an R7 residential district have an interior side yard setback of 10 feet if the building is 45 feet or less high and "2 additional feet for each 10 feet or fraction thereof over 45 feet in height." Because Kerwin's proposed plans demonstrated that the building would be at least 47 feet tall, the code required a setback of 12 feet. Omaha Mun.Code, ch. 55, art. XIV, § 55-734 (2001), also requires that a multiple-family dwelling unit provide 1½ off-street parking places for each one-bedroom unit. Because Kerwin's proposed building contained four one-bedroom units, the code required six off-street parking places.
At trial, the parties adduced conflicting testimony regarding whether there was a sufficient hardship to justify granting the variances. Kerwin testified that the current zoning regulations would prevent her from building the style of building that she desired to build. Kerwin also called Peters, who testified that historically, Dundee was developed into small lots for high-density worker housing. Peters testified that Dundee was developed with the assumption that only one off-street parking stall per unit would be available due to the extensive availability of nearby public transportation when the area was developed. Peters also stated that the current version of the zoning regulations was "definitely drafted to adequately control suburban growth" and "not as friendly" as other codes regarding existing development. Peters commented that in his experience, three out of four of the Board's cases came from the inner city.
In response, Rousseau called an architect who testified that he believed that the lot was not located in a high-density area. Rousseau also testified that he believed that Kerwin's proposed structure was not appropriate for the neighborhood and would decrease his property value.
In deciding to uphold the side yard setback and parking variances, the district court characterized the issues as "questions of density." The court characterized Dundee as having a "densely developed nature" relating to its "develop[ment] at the turn of the 20th Century." These findings are supported by Peters' trial testimony. Because competent evidence supports the findings, we will not substitute our factual findings for those of the district court. See Eastroads v. Omaha Zoning Bd. of Appeals, 261 Neb. 969, 628 N.W.2d 677 (2001).
Rousseau claims that since the lot at issue can be developed in compliance with current zoning ordinances, there is no practical difficulty or substantial hardship that justifies a variance. Rousseau relies on Frank v. Russell, 160 Neb. 354, 70 N.W.2d 306 (1955), in this assertion. In Frank v. Russell, the Nebraska Supreme Court announced a general rule regarding when it is appropriate for a board of adjustment to grant a variance. As is relevant to this case, the court explained:

*136 It appears that the rule respecting the right of a board of adjustment, such as the one here, to grant a variance from zoning regulations on the ground of unnecessary hardship is generally that it may not be granted: Unless the denial would constitute an unnecessary and unjust invasion of the right of property;... if it relates only to a financial situation or hardship to the applicant; if the hardship is based on a condition created by the applicant; if the hardship was intentionally created by the owner; if the variation would be in derogation of the spirit, intent, purpose, or general plan of the zoning ordinance; if the variation would affect adversely or injure or result in injustice to others; or ordinarily if the applicant purchased his premises after enactment of the ordinance.
Id. at 362-63, 70 N.W.2d at 312. Specifically, Rousseau argues that pursuant to Frank v. Russell, Kerwin may not claim hardship, because the zoning regulation did not cause Kerwin a hardship tantamount to a taking, Kerwin purchased the lot after the regulations went into effect, and Kerwin's proposed structure would injure his property value.
First, as the Board correctly responds, the Nebraska Supreme Court has on several occasions approved zoning variances under circumstances that obviously did not constitute a taking or an unjust invasion of the fundamental right of property. See, e.g., Barrett v. City of Bellevue, 242 Neb. 548, 495 N.W.2d 646 (1993) (board ordered to allow variances in height and setback of fence); McClelland v. Zoning Bd. of Appeals, 232 Neb. 711, 441 N.W.2d 893 (1989) (board ordered to issue variance for deck, roof, and stairs); Roncka v. Fogarty, 152 Neb. 467, 41 N.W.2d 745 (1950) (affirming variance of rear yard setback).
Second, the Nebraska Supreme Court has more recently held that the word "ordinarily" in the context of the above-quoted language of Frank v. Russell means that a previously passed zoning ordinance does not automatically preclude a new owner from being able to seek a variance. See Eastroads v. Omaha Zoning Bd. of Appeals, supra. In Eastroads v. Omaha Zoning Bd. of Appeals, the court found that existing ordinances "do not remove the board's discretion, in an appropriate case, to relax the `strict letter' of the zoning code by granting a variance." 261 Neb. at 979, 628 N.W.2d at 684. Further, the court commented that this portion of the Frank v. Russell holding was dicta. In Frank v. Russell, the court's explicit holding was only that a variance is not appropriate where the person seeking the variance had created the condition necessitating the variance.
Third, it appears that the trial court considered Rousseau's testimony that the proposed structure would impair his property value and did not accord weight to it. We will not substitute our factual findings for those of the district court.
The ultimate question is whether the particular form of hardship found herewhere the density of an already existing, land-poor development conflicts with a strict application of area requirementsis sufficient to justify a variance. Certain factual circumstances are by themselves insufficient to justify a finding of hardship. We acknowledge that, standing alone, neither the desire to build a larger building, see Alumni Control Board v. City of Lincoln, 179 Neb. 194, 137 N.W.2d 800 (1965), nor the desire to generate increased profits, see Bowman v. City of York, 240 Neb. 201, 482 N.W.2d 537 (1992), constitutes a sufficient hardship to justify a variance. Although these two cases were decided under different variance standards than the one at issue today, the reasoning justifying the decisions is applicable *137 to the present case. Beyond these situations and the situation in Frank v. Russell, 160 Neb. 354, 70 N.W.2d 306 (1955), where the applicant created his own hardship, there are not hard and fast rules.
Generally, it is the zoning board of appeals' duty, and not the function of a court, to make this kind of decision. The Legislature has granted zoning boards of appeals significant leeway in making decisions and has required district courts to uphold a board's decision, barring illegality, insufficient evidentiary support, or an arbitrary, unreasonable, or clearly wrong decision. See Eastroads v. Omaha Zoning Bd. of Appeals, supra. Specifically, the Supreme Court has explained that administrative agencies including the zoning board of appeals provide
"expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the legislature, to make rules and enforce them in fashioning solutions to very complex problems. Thus, their decisions are not to be taken lightly or minimized by the judiciary."
Id. at 979, 628 N.W.2d at 684 (quoting Bowman v. City of York, supra). We recognize that the Board is dealing with the complex problem of zoning ordinances that must accommodate existing development by granting limited exemptions to their requirements. We are not called to determine whether we would make the same decision under the applicable standard. Therefore, we find that the district court did not abuse its discretion or make an error of law in upholding the Board's decision.

CONCLUSION
The variance for Kerwin's proposed front yard setback is either unnecessary because the proposed setback complies with § 55-782(c)(1) or a minor variance amounting to a mere matter of inches. The district court did not abuse its discretion or make an error of law in determining that the density of the already existing development in Dundee was sufficient hardship to justify upholding the Board's decision to grant the other variances.
AFFIRMED.