IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

FRENCH V. CITY OF OMAHA ZONING BOARD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DAVID W. FRENCH, APPELLANT,

V.

CITY OF OMAHA ZONING BOARD OF APPEALS, A BOARD OF A GOVERNMENT BODY, APPELLEE, AND BRIAN D. NOLAN, APPELLEE.

Filed October 7, 2025.    No. A-24-788.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

David W. French, pro se.

Tyler E. Hiipakka, Assistant Omaha City Attorney, for appellee.

PIRTLE, BISHOP, and FREEMAN, Judges.

FREEMAN, Judge.

### INTRODUCTION

David W. French appeals the order of the district court for Douglas County, which affirmed the granting of three variances for the construction of an apartment complex. After reviewing the record, we conclude that there is competent evidence that supports the district court's factual findings. The district court did not abuse its discretion or make an error of law, and we affirm.

### BACKGROUND

McNeil and Company Builders, L.L.C. (McNeil) owns two parcels of land near 168th Street and Shirley Street in Omaha, Nebraska. One parcel is located southwest of the streets, and the other is located northwest of the streets. McNeil's properties border several single-family homes to the north and west and commercial buildings to the south. McNeil plans to build a

- 1 -

201-unit apartment complex with a clubhouse and a pool on these parcels. As of 2022, both lots are zoned to allow for the construction of a multifamily apartment complex.

In February 2023, McNeil filed an application with the City of Omaha Zoning Board of Appeals (Board) for three variances of certain setback and bufferyard requirements as applied to the southwest lot. Specifically, McNeil requested that the required 35-foot front yard setback be reduced to 15 feet, the 25-foot rear yard setback be reduced to 10 feet, and the 30-foot bufferyard between its property and the residential homes be reduced to 10 feet. These requirements can be found in chapter 55 of the Omaha Municipal Code, specifically Omaha Mun. Code, ch. 55, art. VI, § 55-246 (2020) (front yard and rear yard setback provisions) and art. XIII, § 55-716 (1980) (bufferyard provisions).

In the application section titled "Reason Waiver is Requested (Specify Practical Difficulty or Unnecessary Hardship)," McNeil stated: "The hardship is due to the irregular shape of the lot via the Sanitary Easement and intermittent waterway (wetland and channel) that bisect the South Property." At the time of the application, construction of the apartment complex had not yet started.

The City of Omaha Planning Department (Planning Department) reviewed McNeil's application and issued a responsive report on April 6, 2023. The Planning Department found that there was no demonstrated hardship or practical difficulty to justify McNeil's requests. The Planning Department determined that the requested variances were purely matters of design preference, that McNeil intentionally or inadvertently created the conditions necessitating the variances, and that the ability to use the property was not entirely lost without them. Because the apartment complex could be configured and constructed in a way to comply with all applicable zoning regulations, the Planning Department recommended denying McNeil's application.

The Board held a public hearing on McNeil's requests on April 13, 2023. A notice was sent to residents near the proposed project site, explaining that at the hearing, McNeil would defend its request to the Board. The notice also invited residents to attend and give testimony if they wished.

At the hearing, the Board was provided with several exhibits, including numerous images portraying the southwestern plot's shape and terrain, as well as renderings of McNeil's former and current site plans. A petition in opposition to McNeil's application signed by over 20 neighboring residents was also received. Additionally, several residents submitted letters and email messages detailing the reasons for their opposition, which are summarized below.

Ken Rasmussen, an architect employed by McNeil, appeared at the hearing on the company's behalf. Rasmussen explained that in earlier design plans, one housing unit and the pool were situated very close to the property line and directly across from the residential homes on Shirley Street. This design accounted for the irregular shape of the southwestern plot, as well as the sanitary easement and the wetland channel. McNeil sought the variances to create more space between its apartment complex and the residential homes. The new design plan, which incorporated the requested variances, would construct the pool and the housing unit farther away from the residential homes. The housing unit would be pushed into the rear setback of the lot, closer to the commercial buildings on the southern side. The front yard setback and bufferyard variances would permit McNeil to build the pool at a more internal portion of the property.

Several residents of the neighboring residential homes spoke at the hearing in opposition to McNeil's application. One such resident was French. French owns a parcel of land adjacent to

McNeil's southwestern parcel. French argued that in 2022, McNeil appeared before the Omaha City Council and presented its request to have the property rezoned to permit construction of an apartment complex. At that time, McNeil indicated that it would not need variances for its development. French implied that McNeil was telling "a different story to each government body."

French also took issue with the viability of McNeil's new design plan. He argued that the driveways and curb cuts were misaligned, the garbage collection system was poorly designed, and there was insufficient planning for fire protection. Additionally, French argued that in 1999, McNeil subdivided a portion of the southwestern plot and sold the smaller parcel, exacerbating the irregular shape of the property and creating a self-imposed hardship. Other residents who spoke in opposition to McNeil's application raised concerns about visual blight, increased traffic, conflict with the spirit of the zoning regulations, potential decline in surrounding property values, and the fact that the request appeared to be based solely on design preferences.

After hearing from all interested parties, the public hearing was closed. The Board then deliberated on the record. During this discussion, the Board specifically considered the evidence that during McNeil's rezoning efforts a year prior, the company stated it would not seek any zoning variances to construct its apartment complex. One Board member remarked that such a shift in the design process could be "part of . . . the journey of development; right?"

The Board then reviewed the proposed site plan and determined that the variances requested by McNeil were more substantial than necessary. The Board found that the apartment complex could be developed with a 30-foot front yard setback, rather than the 15 feet requested, and a 25-foot bufferyard instead of the proposed 10 feet. Regarding the rear yard setback (which, if reduced, would move the apartment buildings closer to the adjacent commercial properties), one Board member noted that "we haven't heard -- I guess I haven't heard any opposition on the commercial property side." Thus, McNeil's request to reduce the 25-foot rear yard setback to 10 feet was not disturbed.

Another Board member stated:

I think -- I think there are a couple things here. I appreciate the neighbors coming down. And I know there's been some challenges along the way, but all in all, is there a hardship here? And I would say, one, the lot shape's pretty unique, pretty nonstandard. Two, the wetlands and, three, the sewer easement all pose challenges. The waiver for building A6 -- or as a result of pushing A6 in that rear -- the rear to -- from 25 to 10, I think benefits the neighborhood. Pushes that farther away and that makes sense.

Ultimately, the Board approved the three variances, two as amended, subject to the condition that McNeil double the landscaping between its property and the adjacent residential homes.

French appealed the Board's decision to the district court. The district court held a hearing on the matter, and on September 23, 2024, it issued an order affirming the Board's decision. The district court found that there was substantial evidence in the record to support the Board's granting of the variances.

The court specifically found that the Board allowed all interested parties to speak and present evidence at the public hearing. The court also determined that "[t]he Board found that the irregular shape of the property, combined with a sewer easement and wetlands, created an undue hardship, which triggered the allowance of the variance." Regarding McNeil's prior statement to

the City Council that it would not seek a variance, the court found that at least one board member suggested that the change in plans was not an attempt to "game the system," but rather a "journey of development." The court concluded that "[t]he decision of the [Board] modified the proposed setbacks significantly, and required additional landscaping as a buffer between the single family residences and the project. The Board's unanimous decision was thoughtful, and neither illegal, arbitrary, unreasonable or clearly wrong, and should be affirmed."

French appeals.

## ASSIGNMENTS OF ERROR

French assigns, restated and consolidated, that (1) the district court erred when it found that the Board's decision to grant the variances was supported by the evidence and was not arbitrary, unreasonable, or clearly wrong. French also assigns that (2) the Board acted with gross negligence or in bad faith when it testified on behalf of McNeil during the board meeting.

French also argues, but does not assign, that McNeil's application was not ripe for adjudication. A careful review of this portion of his briefing reveals that he focuses less on the timing or procedural posture of the case and more on challenging the sufficiency of the evidence supporting McNeil's application. These arguments are substantively similar to those he presents under his first assignment of error. Thus, we will review them below through the proper lens of sufficiency of the evidence.

Nevertheless, because ripeness is a component of subject matter jurisdiction, we have examined the issue independently. The basic principle of ripeness is that courts should avoid premature adjudication of abstract or future disagreements that may or may not occur. *Williams v. Frakes*, 315 Neb. 379, 996 N.W.2d 498 (2023). After thoroughly reviewing the record, we conclude there is no ripeness barrier to jurisdiction in this case.

## STANDARD OF REVIEW

On appeal, a district court may disturb the decision of a zoning appeals board only when the decision was illegal or is not supported by the evidence and is thus arbitrary, unreasonable, or clearly wrong. *Bruning v. City of Omaha Zoning Bd. of Appeals*, 303 Neb. 146, 927 N.W.2d 366 (2019). In reviewing a decision of the district court regarding a zoning appeal, the standard of review is whether the district court abused its discretion or made an error of law. *Id*. Where competent evidence supports the district court's factual findings, an appellate court will not substitute its factual findings for those of the district court. *Id.*

## ANALYSIS

*Competent Evidence.*

French argues the district court erred when it found that the Board's decision to grant the variances was supported by the evidence and was not arbitrary, unreasonable, or clearly wrong. Specifically, French asserts that McNeil presented no hardship or practical difficulty that justified the granting of the variances, and even if it did, the hardships were self-inflicted. French also contends that the Board ignored McNeil's misleading, inaccurate, and contradictory statements about the exact measurements of the requested variances.

We begin by reviewing the general principles that govern appeals of zoning board decisions. Neb. Rev. Stat. § 14-411 (Reissue 2022) provides the applicable standard governing the Board's power to grant variances from zoning ordinances. See also *Rousseau v. Zoning Bd. of Appeals of Omaha*, 17 Neb. App. 469, 764 N.W.2d 130 (2009). The relevant portion of § 14-411 provides:

> Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of such ordinance, the zoning board of appeals shall have the power in passing upon appeals, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction, or alteration of buildings or structures or the use of land, so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done.

"Unnecessary hardships" generally address a use prohibited by an ordinance, whereas "practical difficulties" generally address improvements which conflict with the restrictions. *Bruning v. City of Omaha Zoning Bd. of Appeals, supra*. Certain factual circumstances, standing alone, are insufficient to justify a finding of hardship. *Id.* (citing *Rousseau v. Zoning Bd. of Appeals of Omaha, supra*.) These facts include a desire to build a larger building, the desire to generate increased profits, and where the applicant created his or her own hardships. *Id.*

Neb. Rev. Stat. § 14-413 (Reissue 2022) provides for an appeal from the Board's decision to the district court on the ground that the decision is illegal. Section 14-413 specifically states: "Any person or persons . . . aggrieved by any decision of the zoning board of appeals . . . may present to the district court a petition, duly verified, setting forth that such decision is illegal, in whole or in part, and specifying the grounds of such illegality." The Nebraska Supreme Court has recognized that administrative boards, such as the board of zoning appeals, provide an expertise and specialization that is not found in the judicial or legislative branches. See *Eastroads v. Omaha Zoning Bd. of Appeals*, 261 Neb. 969, 628 N.W.2d 677 (2001). Consequently, their decisions are not to be taken lightly or minimized by the judiciary. *Id.*

A district court may disturb the decision of a zoning appeals board only when the decision was illegal or is not supported by the evidence and is thus arbitrary, unreasonable, or clearly wrong. *Bruning v. City of Omaha Zoning Bd. of Appeals*, 303 Neb. 146, 927 N.W.2d 366 (2019). A Nebraska appellate court's review of a district court's decision regarding a zoning appeal is narrowly limited to whether the district court abused its discretion or committed an error of law. *Id.* Where competent evidence supports the district court's factual findings, an appellate court will not substitute its factual findings for those of the district court. *Id.*

In asserting that there is no hardship in this case, French relies upon the Planning Department's report, which states that the variances are unnecessary, and the apartment complex can be built in compliance with the applicable ordinances. He alternatively argues that if there are hardships present, they are self-inflicted. French points to several purportedly self-inflicted conditions, including McNeil's decision to leave the land undeveloped for over 25 years; its choice to construct apartment complexes after nearby single-family homes were built; its failure to negotiate modifications to the sewer easement; its negligent land management that led to an adverse possession claim in a separate case; its allegedly "flagrant" overall site plan design; and

McNeil's 1999 subdivision of the southwest plot, which French argues exacerbated any alleged hardship.

At the outset, we note that our record lacks sufficient evidence on several of these issues. We have little to no information as to why McNeil followed the construction timeline that it did; what bargaining power, if any, it has regarding the sewer easement; the status of the adverse possession claim; or why it previously subdivided the plot and how that subdivision impacted the lot's shape.

Moreover, our review in this case is limited. Where competent evidence supports the district court's factual findings, an appellate court will not substitute its factual findings for those of the district court. *Bruning v. City of Omaha Zoning Bd. of Appeals, supra*.

The district court found that there was substantial evidence in the record to support the Board's decision. The Board determined that the variances were appropriate due to the irregular shape of the property, the sewer easement, and the wetlands. The district court noted that the Board's decision was supported by evidence presented at the hearing, which included testimony from Rasmussen, exhibits portraying the shape and terrain of the property, and detailed illustrations of the former and current site plans. Although there was opposition from many residential neighbors, the Board determined that granting the variances would benefit the entire neighborhood by increasing the space between the residential homes and the apartment complex.

Further, the district court recognized the Board's measured approach in this case. The Board carefully considered the requested variances and determined that smaller, less intrusive adjustments would allow McNeil to proceed with the site plan while maintaining adequate separation from the neighboring residential properties. As a result, the Board approved scaled down versions of two of the three variances. The Board also doubled the landscaping requirements between McNeil's property and the adjacent residential homes.

We acknowledge that the Planning Department determined that McNeil did not demonstrate a hardship or practical difficulty and that the requested variances were purely matters of design preference. The Planning Department also found that McNeil had either intentionally or inadvertently created the hardships it cited in its application. However, the Board disagreed with this assessment, and the district court provided a detailed analysis of the facts that supported the Board's decision. We will not substitute alternative factual findings for those of the district court when competent evidence supports the court's factual findings. Therefore, we cannot say that the district court abused its discretion or committed an error of law in affirming the Board's decision.

French also contends that the Board overlooked McNeil's misleading, inaccurate, and contradictory statements regarding the precise measurements of the requested variances. French argues that McNeil's proposed site plan did not accurately reflect or measure the necessary setbacks, and thus is evidence that McNeil could have been "attempt[ing] to obscure the true nature of the variance requests." Brief for appellant at 31. We disagree. There is no evidence that McNeil presented its site plan and variance requests in bad faith. Furthermore, the Board recognized that the requested variances were larger than necessary to execute McNeil's design plan and reduced two of the variances accordingly. McNeil did not oppose either of these reductions.

Finally, French alleges that the Board disregarded all objections raised by the residents and unfairly characterized them as "classic NIMBYs—'Not In My Backyard' spineless complaining troublemaking simpletons . . . who present noisy non-meritorious opposition to any development

in any form and are proponents of conspiracy theories." Reply brief for appellant at 24. The facts do not substantiate this position. Nothing in the record indicates that the Board was biased against the residents or categorically dismissed their objections simply because they opposed the proposed site plan. In fact, the minutes from the public hearing show that the Board gave all opponents an opportunity to express their concerns. Although it is unclear from the record precisely when the Board received exhibits from the parties, including the letters and email messages submitted by the residents, the oral arguments presented at the hearing closely aligned with the positions outlined in their written submissions. Further, the district court received the entire public hearing record, including the written submissions, and still found sufficient evidence to uphold the Board's decision.

As previously stated, our review in this case is narrowly limited to whether the district court abused its discretion or committed an error of law in affirming the Board's decision. Based upon our review of the record, we find that there is competent evidence to support the court's finding that hardships or practical difficulties existed to justify the granting of the variances.

*Gross Negligence or Bad Faith.*

French argues that the Board acted with gross negligence or in bad faith when it testified on behalf of McNeil during the public hearing. French points to two specific statements made by Board members during the hearing. The first statement concerns the oppositional statements made during the hearing and reads: "[W]e haven't heard -- I guess I haven't heard any opposition on the commercial property side." The second statement concerns McNeil's prior statement to the City Council that it would not seek variances. When discussing the implications of the prior statement, a Board member remarked that McNeil's shift in position was "part of . . . the journey of development; right?"

The Board maintains that it did not testify on behalf of McNeil during the hearing. Instead, it contends that the statements in question were appropriately made during its public deliberations. We agree with the Board.

French's attempt to characterize the Board's statements as testimony on behalf of McNeil is unconvincing. The first statement concerning the lack of opposition from commercial property owners is supported by the record. No one who spoke in opposition at the public hearing identified themselves as commercial property owners. The second statement concerning "the journey of development" was clearly meant to reflect the Board member's understanding that development plans can evolve over time. The Board member was simply expressing that McNeil's prior statement to the City Council did not necessarily suggest an intent to "game the system." Rather, the member reasoned that since that earlier statement was made, new circumstances likely arose that prompted McNeil to seek variances.

In short, neither of the statements French takes issue with can reasonably be interpreted as testimony on behalf of McNeil. The Board did not act with gross negligence or in bad faith. This assignment of error fails.

CONCLUSION

The Board granted McNeil's variances based on three hardships or practical difficulties, which include the irregular shape of the lot, the sanitary easement, and the wetland channel that

bisects the property. These factual findings were supported by competent evidence. Thus, the district court did not abuse its discretion or make an error of law in affirming the Board's decision.

AFFIRMED.