OWEN A. FRANK ET AL., APPELLANTS, V. WRAY MACK RUSSELL ET AL., APPELLEES.

IN RE APPEAL OF OWEN A. FRANK AND DOROTHY H. FRANK, HUSBAND AND WIFE, FROM THE PURPORTED ORDER OF THE BOARD OF ADJUSTMENT OF THE CITY OF SCOTTSBLUFF.

OWEN A. FRANK ET AL., APPELLANTS, V. BOARD OF ADJUSTMENT OF THE CITY OF SCOTTSBLUFF, NEBRASKA, APPELLEE.

70 N. W. 2d 306

Filed May 6, 1955. Nos. 33702, 33705.

*Mothersead, Wright & Simmons,* for appellants.

*Russell E. Lovell* and *Atkins, Lyman & Ferguson,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

Here are two actions which were tried together but not consolidated. One is by Owen A. Frank and Dorothy H. Frank, plaintiffs and appellants, against Wray Mack Russell and Marjorie Glandon Russell, defendants and appellees. The action is one for the purpose of enjoining erection of a residential building on Lot 6 and the south half of Lot 5, Block 7, Bungalow Addition to the City of Scottsbluff, Nebraska, with its east end or side less than 40 feet, or only 27 feet, west of the east line of the described property. The injunction was denied and from the judgment the Franks have appealed to this court. This action will be hereinafter referred to by its case number in this court which is 33702.

The other action grows out of the issuance of a permit on December 7, 1953, by the city engineer and ex officio building inspector of the city of Scottsbluff for the construction of a residence building on the described property. The permit granted permission for the construction of the building with its east end or side 27 feet west of the east line and its south end or side 12½ feet north of the south line. The attention of the city engineer was called to a restrictive ordinance of the city whereupon preparation for construction was ordered stopped by the city engineer. Thereafter Wray Mack Russell and Marjorie Glandon Russell appealed from the action of the city engineer to the board of adjustment of the city of Scottsbluff. The board of adjustment conducted a hearing, after due notice to all parties con-

cerned, and on January 5, 1954, approved the plans of the Russells for the construction of the building which had in the first instance been approved by the city engineer. There was an earlier hearing by the board but the parties are apparently in accord that it was ineffective. It therefore will receive no further attention herein. From the order of the board approving the plans, Owen A. Frank and Dorothy H. Frank appealed to the district court where a trial was had. The district court sustained the action of the board and from the judgment the Franks have appealed to this court. This case will be hereinafter referred to by its case number in this court which is 33705.

The Franks are appellants in both actions and they will be so referred to hereinafter in this opinion. The Russells will be referred to as defendants. The board of adjustment, appellee in case No. 33705, will be referred to as appellee.

One apparent reason why the two cases were not consolidated but were only tried together was that the defendants contended in case No. 33702 that the appellants were without right to maintain their action for injunction for the reason that they had a full, complete, and adequate remedy at law. This question was decided adversely to the appellants in the final decree. However, along with this determination and as a part of the decree the court made a determination on the merits of all other questions and issues presented by the pleadings and evidence.

It appears, however, unnecessary to consider this question since the defendants appear to have abandoned this contention and have presented the case fully with insistence that this court shall sustain the decree on the merits of the controversy.

In brief detail and in substance the appellants in case No. 33702 alleged in their petition that on May 1, 1951, ordinance No. 890 was adopted by the city of Scottsbluff and that subdivision (m) of section X is the following:

"Where lots comprising twenty-five (25) per cent or more of the footage of any block are developed with buildings, no building hereafter erected or structurally altered, shall project beyond the average front yard depth so established, provided further that this regulation shall not be interpreted so as to require a front yard depth of more than fifty (50) feet." They further alleged that prior to May 1, 1951, all of the building lots facing east in Block 7, Bungalow Addition, were built upon and occupied as family residences save and except the property owned by defendants and that all of the lots including that of defendants face east on Fifth Avenue; that all of the lots on which buildings had been erected constituted more than 25 percent of the footage of the block; and that all of the buildings had been set back from the east lot line 40 feet.

They further alleged that the defendants will, unless enjoined, build and construct a residence on their property in this block which will project to within 27 feet of the east lot line of the block. The property of the defendants in this block is that hereinbefore described. The dimensions of this property are 75 feet north and south and 130 feet east and west.

They further alleged as grounds for injunctive relief that the construction contemplated would be violative of the city ordinance; that it would obstruct appellants' view; that it would interfere with the enjoyment of their home; and that it would greatly depreciate the value of their property and cause irreparable damage.

To the petition the defendants filed an answer. The substance of the answer necessary to be set forth at this point is the following: They admitted the provision of the ordinance pleaded by the appellants but said that it has no application to the controversy. Instead they said subdivision (1) of section X is applicable and that pursuant to its terms and their building plans and permit from the city of Scottsbluff they have the right to construct their building with a set-back from the east

property line of not more than 27 feet. The provision of the ordinance referred to is the following: "On corner lots, the front yard requirements for the street upon which the front of the building faces shall apply. The side yard shall be not less than one-half (½) of the front yard requirements for buildings on lots fronting upon the side street, except that where there are no lots fronting on that street, the side yard requirements only shall apply. No accessory building on said corner lot, regardless of the way it faces, shall project beyond the front yard line of either street; provided further, that this regulation shall not be so interpreted as to reduce the buildable width of a corner lot facing an intersecting street and of record at the time of the passage of this ordinance to less than twenty-eight (28) feet nor to prohibit the erection of an accessory building with which this regulation cannot reasonably be complied."

Also by way of answer they said that the appellants were estopped to assert any rights under the provision of the ordinance pleaded by the appellants.

For convenience in understanding it appears well to state here that in these cases there is no attack by anyone upon the validity of any ordinance provision. The question in this respect is only of interpretation and application. It may be said also that there is no material factual dispute as to any matter determinative of the issues in either case.

From this point forward the two cases, for the purposes of decision, will be treated together. The questions presented are so intermingled that this appears proper.

As has been observed case No. 33705 is an appeal from action of the district court sustaining a decision of the board of adjustment permitting the defendants to erect their building within 27 feet of the east lot line. In it the issues presented to the trial court and decided by it were in substance the same as those presented and tried in case No. 33702. The decisions were substantially the

same and both were adverse to the appellants. The appeals are from these decrees. There are numerous assignments of error set forth which appellants urge as grounds for reversal, but substantially those necessary to be considered herein are embodied in the contentions that the board of adjustment acted without proper authority; that the district court improperly interpreted and applied the zoning ordinances; and that the court erred in holding that the appellants were estopped to assert any rights under the ordinances.

On the trial of both cases in the district court the question of which of the two provisions of ordinance No. 890 defined the rights of defendants as to erection of a building on their property was presented. The appellants contended that subdivision (m) of section X applied. The defendants contended that subdivision (l) of section X applied and that by appropriate application of it they were entitled to erect their building as planned.

It cannot be known to what extent these conflicting contentions were presented to the board of adjustment in the proceeding out of which case No. 33705 flows since no evidentiary record was made of what transpired at the hearing. It is known however that the board did not decide between the contentions. It decided in this connection only that under authority of paragraph 5 of section XI of ordinance No. 890 the exactions of subdivision (m) of section X of this ordinance should be waived and it did waive them and granted permission for the erection of the building 27 feet from the east lot line and 12½ feet from the south line. Paragraph 5 of section XI is the following: "Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this ordinance, the Board of Adjustment shall have power in passing upon appeals to make minor variations in regulations or provisions of this ordinance relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the ordinance shall be ob-

served, public safety and welfare secured, and substantial justice done. Such variations shall be passed by a majority of the Board."

The true issue presented to the district court in case No. 33705 therefore was the question of whether or not there was a valid exercise of the grant of power contained in paragraph 5 of section XI of the ordinance. As pointed out earlier herein there is no attack upon the validity of any provision of the ordinance.

Paragraph 5 of section XI contains elements for the determination of the basis upon which the power therein contained may be properly exercised and departures and variations permitted. Variations to be permissible must be minor; they may not violate the spirit of the ordinance; they may not interfere with public safety or welfare; they may not abridge substantial justice; they must be in relief of unnecessary hardship; and they must relieve against practical difficulties.

Taking these elements in the order set forth it may well be said that the term minor has no technical or specific significance. It is a relative term indicating a situation of inferior degree or importance.

The design of the ordinance as of the time involved and as to the property involved here was to provide uniformity of frontage in this block of not less than 40 feet. This was a condition to which the other owners of property in the block were entitled under the ordinance. It does not appear that an interference with that right to the extent of a 13 foot encroachment may be regarded as minor.

Obviously the spirit of the ordinance in this connection was to provide a harmony certainly aesthetically desirable in city planning. A building constructed as this one was planned would be destructive of that harmony and thus of the spirit of the ordinance.

In all probability this departure would not in anywise interfere with public safety or welfare.

On the question of substantial justice it is, to say the

least, difficult to perceive how this departure which destroys the symmetry of the block front and takes away a large part of the frontage view of the other property in the block may be said to result in substantial justice.

To deny the defendants the right to construct in accordance with their plan would involve hardship to them, and also, a departure from the ordinance would relieve them against practical difficulties. It must be remembered however that these hardships and difficulties were created by them, in the face and in the light of the prohibitions of the ordinance. It would certainly be unreasonable to allow one to create his own hardship and difficulty and take advantage of it to the prejudice of innocent parties.

The subject of hardship and the subject generally of the right to have a departure from the provisions of a zoning ordinance are extensively considered in annotations in 168 A. L. R., pages 15 to 46, and from an examination of these annotations and the cited cases it becomes clear that the action of the board of adjustment was unreasonable and arbitrary.

At page 27, it is said: "—the essential inquiry on an application for a variance on the ground of undue hardship is whether, in the circumstances exhibited, the denial thereof would constitute an unnecessary and unjust invasion of the fundamental right of property."

At page 28, it is said: "It is generally held that, to warrant the granting of a variance on the ground of unnecessary hardship, the hardship relied upon must be special and peculiar to the applicant, and must not arise from a condition which affects other property in the same zone or district generally."

At page 30, it is said: "—the financial situation or pecuniary hardship of a single owner affords no adequate grounds for putting forth this extraordinary power affecting other property owners as well as the public."

At page 33, it is said: "Ordinarily, a claim of un-

necessary hardship cannot be based upon conditions created by the owner or applicant."

Again at the same page, it is said: "A hardship intentionally created by the owner of premises for the purpose of laying a basis for an application for a variance cannot be considered for such purpose."

At page 34, it is said: "The fact that the applicant has made expenditures for the purpose of fitting a building for a nonconforming use, under the belief that such use was permissible under the zoning regulations, has been held not to warrant or require the granting of a variance on the theory that the refusal thereof would impose unnecessary hardship on the applicant."

At page 37, it is said: "The power to vary the application of zoning regulations, or to permit special exceptions thereto, is commonly expressly limited to such variations or exceptions as are consistent or in harmony with, or not subversive or in derogation of, the spirit, intent, purposes, or general plan of such regulations."

At page 38, it is said: "—'the dominant design of any zoning act is to promote the general welfare. The protection of health and the promotion of safety are salient factors. The stability of the neighborhood and the protection of property of others in the vicinity are important considerations.'"

At page 40, it is said: "A board of zoning appeals has power to grant a variance on the ground of unnecessary hardship only where the grant of such privilege will not injure or result in injustice to others."

At page 45, it is said: "The claim of unnecessary hardship as a ground for a variance is not ordinarily available to one who purchased the premises after the enactment of the regulation in question."

It appears that the rule respecting the right of a board of adjustment, such as the one here, to grant a variance from zoning regulations on the ground of unnecessary hardship is generally that it may not be granted: Unless the denial would constitute an un-

necessary and unjust invasion of the right of property; if the grant relates to a condition or situation special and peculiar to the applicant; if it relates only to a financial situation or hardship to the applicant; if the hardship is based on a condition created by the applicant; if the hardship was intentionally created by the owner; if the variation would be in derogation of the spirit, intent, purpose, or general plan of the zoning ordinance; if the variation would affect adversely or injure or result in injustice to others; or ordinarily if the applicant purchased his premises after enactment of the ordinance.

The appellee asserts that the district court was bound to sustain the action of the board, and that this court is likewise bound, in the absence of a finding that the action of the board was illegal.

This contention finds support in the statute. Section 19-912, R. R. S. 1943, which is a part of the act granting cities their powers as to zoning, provides for appeal only on the ground of illegality. The act clearly contemplates a review of facts as well as law on appeal. Therefore we conclude that as to questions of fact the rule which has application to other administrative agencies and actions at law should apply, that is, that the decision of the board of adjustment will not be disturbed unless it is found to be illegal or from the standpoint of fact it is not supported by evidence, or is arbitrary and unreasonable, or is clearly wrong. See, Rawlings v. Chicago, B. & Q. R. R. Co., 109 Neb. 167, 190 N. W. 569; Omaha & C. B. St. Ry. Co. v. City of Omaha, 125 Neb. 825, 252 N. W. 407; Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756.

The conclusion is therefore that the finding and order of the board of adjustment was violative of the power it had under paragraph 5 of section XI of ordinance No. 890 and that the district court erred in holding in its decree to the contrary.

As pointed out in cases No. 33702 and No. 33705 the

question of the interpretation and application of sub-divisions (1) and (m) of section X was presented and tried on the merits and a decree was rendered in each case fully determining all issues presented on the merits.

The court found and decreed that the property of defendants was a corner lot and that subdivision (1) of ordinance No. 890 was applicable thereto. The appellants seek a reversal of this part of the finding and decree and an adjudication that the restriction of sub-division (m) of section X of the ordinance applies as a restriction against the erection of buildings on defendants' property nearer than 40 feet from the east lot line.

The two provisions have been quoted herein and from examination it is clear that the prohibition of sub-division (m) is absolute and without exception. It is further clear that as to new construction or alteration it permits no building, no matter how it is faced or constructed, to extend into the restricted area.

This provision is in apparent conflict with subdivision (1). We think the conflict is real and not merely apparent.

In this light and in the light of the fact that no party has seen fit to challenge the validity but only the interpretation and application of ordinances it appears to be our duty, if possible, to harmonize the two. In order to do so it becomes necessary to examine into the purposes to be accomplished by the provisions in the light of reason and common and general knowledge and experience.

It becomes readily apparent that, if the defendants' contention with reference to subdivision (1) is to be accepted, the restriction of subdivision (m) is completely nullified as to defendants' property because this property is a corner lot. The effect of this would be to allow the defendants under subdivision (1) to place the front of their building on Twenty-second Street in conformity with the frontage restriction thereon, if any,

and place the east end of their building 20 feet from the east lot line or one-half the distance of the restriction for buildings fronting on Fifth Avenue.

By analysis it becomes clear that subdivision (1) grants to owners of corner lots the right to select either of the two sides for the front of his house. Having selected one side for the front he is bound by the building line established for the front of buildings on that street. In such case, as pointed out, the side of his building shall be not less than half of the front yard restriction for the street which he has selected for the side of his building.

It is impossible to conclude that this was the purpose of the provision or the intent of the city in the adoption of the zoning ordinance. It is inconceivable that the city intended to destroy the right of property owners or itself to exact adherence to restriction so clearly and positively set forth in subdivision (m).

The grant of subdivision (1) as to width of the side yard is not absolute. It is limited. The provision of subdivision (m) is absolute and unlimited.

The only way to give effect to the two provisions of this ordinance is to say that subdivision (m) is a fixed limitation upon the provision of subdivision (1) as to width of the side yard. This conclusion, we hold, gives full effect to the purposes of the ordinance and the intent of the city in its adoption. It does not destroy but preserves the ordinance. It is reasonable. Any other conclusion would be unreasonable and arbitrary. Thus applied the defendants were required to construct their building so that its east side should be not less than 40 feet from the east lot line.

There is another question necessary to be considered herein. The defendants have insisted that the appellants are estopped to claim any right to the maintenance of the restriction of subdivision (m) of the ordinance. This contention is based on the fact that at one time the appellants owned the property now owned by the

defendants and that when they sold it they did so with a 5-year restriction which had expired.

This was a fact, but the restriction had expired before the zoning ordinance was adopted and before defendants started construction. The appellants had no interest in or control over the property when the ordinance was adopted. In truth the restrictive provisions under examination here have attached to this property since 1947 which was before the defendants acquired it. The doctrine of estoppel applies when one by his words or conduct causes another to believe in the existence of a certain state of facts and to act upon that belief or to alter his previous condition. See, State v. Smith, 135 Neb. 423, 281 N. W. 851; Bleicher v. Heeter, 141 Neb. 787, 4 N. W. 2d 897. The contention that appellants are estopped is without merit.

The decree in case No. 33702 is reversed and the cause remanded to the district court with directions to enjoin defendants from construction of their building with its east end less than 40 feet from the east lot line.

The decree in case No. 33705 is reversed with directions to render decree effectually overruling the order of the board of adjustment wherein it granted authority to the defendants to construct a building on the property in question less than 40 feet from the east line thereof.

REVERSED AND REMANDED WITH DIRECTIONS.