JOAN BARRETT, APPELLEE, V. CITY OF BELLEVUE, BOARD OF ADJUSTMENT, APPELLANT.

495 N.W.2d 646

Filed February 26, 1993.   No. S-90-742.

John W. Herdzina, Bellevue City Attorney, of Abrahams, Kaslow & Cassman, for appellant.

James C. Cripe for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

PER CURIAM.

Asserting, in summary, that the district court misconstrued the authority of a board of adjustment, the defendant-appellant, City of Bellevue, Board of Adjustment, challenges the reversal of its refusal to grant the plaintiff-appellee, Joan Barrett, a zoning variance. We affirm.

Barrett's property abuts that of Frank Semin and sits 6 feet higher than his property. Semin's occupancy of his property predates 1980, when Barrett purchased her property. In 1989, Semin lowered the grade of his lot "at least a foot and left [Barrett] hanging with one foot of dirt." As a result, Barrett had a retaining wall built to "hold [her] dirt in." The height of the retaining wall appears to be approximately even with the height of Barrett's land.

Semin has, since late 1989, maintained on his property several spotlights and cameras. Some of the lights are activated by motion, such that even a moving animal turns them on. Lights also go on at other times, such as when Barrett leaves for work at 5 o'clock in the morning and when guests arrive at the Barrett house. In addition, Semin has told the occupants of the Barrett house and visitors that he has them on video. Because at least some of the lights are suspended from the eaves of Semin's garage and the Barrett property sits above the Semin property, these lights, when on, shine into the windows of the Barrett bedrooms and at night disturb the sleep of the occupants. As a consequence of all the foregoing, Barrett feels intimidated and as if she is under surveillance; she has lost 50 pounds due to the stress and tension caused her.

Although the record establishes the presence of an animus between these two neighbors, Semin claims that he maintains the lights and cameras for reasons of security.

Barrett seeks a variance so that she may erect an 80-inch-high wooden fence adjacent to and at the level of her retaining wall and between the two properties in order to shield her house from Semin's lights and cameras. The relevant zoning

regulation limits the fence height to 42 inches; in addition, the regulation requires the fence to be set back 50 feet from the front lot line, and Barrett wishes to set her fence back only 24 feet.

The board urges that its power does not extend to the granting of a variance to resolve this type of dispute between neighbors and that Barrett's remedy, if any, lies elsewhere in the law.

The controlling statute is found at Neb. Rev. Stat. § 19-910 (Reissue 1991). It reads, in relevant part:

> The board of adjustment shall . . . have only the following powers: . . . (3) where by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the enactment of the zoning regulations, or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of any enacted regulation . . . would result in peculiar and exceptional practical difficulties to or exceptional and undue hardships upon the owner of such property, to authorize, upon an appeal relating to the property, a variance from such strict application so as to relieve such difficulties or hardship, if such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of any ordinance or resolution. No such variance shall be authorized by the board unless it finds that: (a) The strict application of the zoning regulation would produce undue hardship; (b) such hardship is not shared generally by other properties in the same zoning district and the same vicinity; (c) the authorization of such variance will not be of substantial detriment to adjacent property and the character of the district will not be changed by the granting of the variance; and (d) the granting of such variance is based upon reason of demonstrable and exceptional hardship as distinguished from variations for purposes of convenience, profit or caprice. No variance shall be authorized unless the board finds that the condition or situation of the property

concerned or the intended use of the property is not of so general or recurring a nature as to make reasonably practicable the formulation of a general regulation to be adopted as an amendment to the zoning regulations. . . .

The most recent application of the foregoing statute is found in *Bowman v. City of York*, 240 Neb. 201, 482 N.W.2d 537 (1992), wherein we held that since the evidence failed to establish that a strict application of the setback requirement there at issue would have produced undue hardship for the owner of the property, the district court correctly reversed the grant of a variance. In doing so, we noted that § 19-910 empowers a board of adjustment to grant a variance from a zoning regulation only if strict application of the regulation, because of the unusual physical characteristics of the property existing at the time of the enactment of the regulation, " 'would result in peculiar and exceptional practical difficulties to or exceptional and undue hardships upon the owner . . . .' " *Id.* at 213, 482 N.W.2d at 545. See, also, *Frank v. Russell*, 160 Neb. 354, 70 N.W.2d 306 (1955).

*Bowman* reaffirmed that in an appeal from a board of adjustment to the district court, the district court may disturb the board's decision only if the decision was illegal or not supported by the evidence, and was thus arbitrary, unreasonable, or clearly wrong. *Bowman* also determined that on appeal from a district court's review of a decision of a board of adjustment, the appellate court is to decide if the district court abused its discretion or made an error of law; where competent evidence supports the district court's factual findings, the appellate court will not substitute its factual findings for those of the district court.

The evidence here establishes that strict application of the subject zoning regulation would indeed, because of the higher elevation of the Barrett property, result in undue hardship to Barrett and that the hardship is not of the type generally shared by other properties in the same zoning district and vicinity.

The nature of the variance is such that the district court neither made an error of law nor abused its discretion in implicitly finding that the variance would not create a substantial detriment to the adjacent property, that the

character of the district would not be changed, and that the variance would not produce a substantial detriment to the public good or substantially impair the intent and purpose of the zoning regulation.

Although there is no direct evidence that Barrett's property sat at least 6 feet higher than the Semin property when the zoning regulation was adopted, the difference in elevation of the two properties is so great that we cannot say the district court made an error of law or abused its discretion in impliedly finding that Barrett's property was in that regard substantially in its present condition at the time the regulation was adopted.

Accordingly, we affirm the judgment of the district court.

AFFIRMED.

CAPORALE, J., dissenting.

I respectfully dissent, for it seems to me that the majority has decided this case not on the basis of the trial record which was made, but on the basis of a trial record it assumes could have been made. The fact of the matter is that the trial record presented to us develops virtually none of the evidence required by Neb. Rev. Stat. § 19-910 (Reissue 1991) for the grant of a variance.

Not only do we not have any evidence of when the zoning ordinance in question was adopted, we have no evidence that the disparity in the elevations of the Barrett and Semin properties is at all unusual in the pertinent zoning area. All the record tells us in this regard is that the Barrett property is the highest one in the block and that the land slopes downward toward the Semin property.

Nor do I understand how in the face of a silent record the majority can conclude that the district court neither made an error of law nor abused its discretion in impliedly finding that "the variance would not create a substantial detriment to the adjacent property, that the character of the district would not be changed, and that the variance would not produce a substantial detriment to the public good or substantially impair the intent and purpose of the zoning regulation."

Bearing in mind that whether Semin has the right to maintain his lights and cameras is not before us, what demonstrates that an 80-inch-high fence does not interfere with the enjoyment of

his property by, for example, restricting his view, as was the case in *Frank v. Russell*, 160 Neb. 354, 70 N.W.2d 306 (1955), or restricting the amount of air circulation and sunlight, as was the case in *Bowman v. City of York*, 240 Neb. 201, 482 N.W.2d 537 (1992)? Nothing. Bearing in mind that Barrett's fence will project 26 feet closer to the front lot line of her property than other fences in the zoning district are permitted to project, what demonstrates that the variance does not change the character of the district by, for example, changing its harmonious appearance, as was the case in *Frank v. Russell, supra*? Nothing. Bearing in mind that extra 26-foot projection, what demonstrates that the variance does not produce a substantial detriment to the public good or substantially impair the intent and purpose of the zoning regulation by, for example, limiting visibility for those using the street abutting the Barrett property? Nothing.

Section 19-910 confers upon boards of adjustment the very limited authority to exempt from the operation of a zoning regulation property which, because of a statutorily specified extraordinary or exceptional situation or condition existing at the time of the adoption of the regulation, causes the owner thereof exceptional and undue hardship of the statutorily described types; provided, however, that the exemption does not work a substantial detriment to adjacent property, does not change the character of the district, and does not substantially impair the intent and purpose of the regulation. Thus, harsh as the result may appear to be, the contention of the board of adjustment that Barrett's remedy, if any, lies elsewhere in the law is legally correct, and I would therefore reverse the judgment of the district court.

By permitting its compassion to override its reason, the majority has ignored the narrow scope of § 19-910 and this court's prior application of that statutory language. See, e.g., *Bowman v. City of York, supra*. In so doing, the majority has converted boards of adjustment into courts of equity with the power to abate what may be only private nuisances, thus proving, once again, the wisdom of the rubric that hard cases make bad law. *Northern Securities Co. v. United States*, 193 U.S. 197, 24 S. Ct. 436, 48 L. Ed. 679 (1904) (Holmes, J.,

dissenting).

FAHRNBRUCH, J., joins in this dissent.