Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/26/2021 08:09 AM CDT

- 63 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

CARLA DOLEZAL-SOUKUP, APPELLANT, V. DODGE
COUNTY BOARD OF ADJUSTMENT AND JOSEPH
KREIFELS AND TERI KREIFELS, HUSBAND
AND WIFE, APPELLEES.

___ N.W.2d ___

Filed December 31, 2020.    No. S-20-295.

1. **Zoning: Evidence: Appeal and Error.** A district court may disturb a decision of a board of adjustment if the decision was illegal or is not supported by the evidence and is thus arbitrary, unreasonable, or clearly wrong.

2. **Zoning: Evidence.** In deciding whether a board of adjustment's decision is supported by the evidence, the district court shall consider any additional evidence it receives.

3. **Zoning: Courts: Appeal and Error.** In appeals involving a decision of a board of adjustment, an appellate court reviews the decision of the district court, and irrespective of whether the district court took additional evidence, the appellate court is to decide if, in reviewing a decision of a board of adjustment, the district court abused its discretion or made an error of law.

4. **Appeal and Error.** Where competent evidence supports the district court's factual findings, an appellate court will not substitute its factual findings for those of the district court.

5. **Zoning: Appeal and Error.** The party appealing the board of adjustment's decision to district court must specify the grounds of the illegality.

6. **Zoning.** When it comes to the determination of whether a landowner will experience sufficient hardship to justify a variance, the decision of a board of adjustment carries significant weight.

7. ____. The financial situation or pecuniary hardship of a single owner affords no adequate grounds for granting a variance from a zoning regulation.

- 64 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

8. \_\_\_\_. As a general rule, hardship that is personal to the property owner will not support the grant of a variance.

9. **Zoning: Proof.** The applicant for a variance must show that the property is in and of itself unusual in a manner which is different from the nature of surrounding properties and relates to the hardship complained of and that granting a variance to take this into account would not substantially affect the zoning plan.

10. **Zoning.** A self-imposed hardship exists where a party comes to the restricted subject property with a particular unpermitted use in mind and mindful of the impossible area restrictions for that use. By contrast, a hardship is not self-imposed if it results from inherent and preexisting characteristics of the property.

11. \_\_\_\_. A self-imposed hardship is not a per se bar to a variance. Rather, a self-imposed hardship is a factor for the regulatory authority to consider when deciding whether or not to grant the variance.

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed.

David V. Drew, of Drew Law Firm, P.C., L.L.O., for appellant.

Robert S. Keith and Alexis M. Wright, of Engles, Ketcham, Olson & Keith, P.C., for appellee Dodge County Board of Adjustment.

Spencer B. Wilson and David C. Mitchell, of Yost, Schafersman, Lamme, Hillis, Mitchell, Schulz & Hartmann, P.C., for appellees Joseph Kreifels and Teri Kreifels.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

Carla Dolezal-Soukup appeals the order of the district court, which approved the granting of a variance for a 4-H pigpen built in violation of county setback requirements. We conclude there is competent evidence in the record which supports the district court's factual findings. The district court did not abuse its discretion or make an error of law in upholding the decision to grant a variance. We affirm.

- 65 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

## BACKGROUND

Since 2012, Joseph Kreifels and Teri Kreifels have owned approximately 5.15 acres of land in the A-3 agricultural-transitional zoning district of Dodge County, Nebraska. The property is located on the north side of County Road O, east of Highway 275, in Nickerson, Nebraska. The lot is triangle shaped. The Kreifels' residence and two steel sheds, which were in existence at the time the Kreifels purchased the property, are located in the lot's narrow, south corner. The ground is flat in the south with a downgrade to the north and west. The lot's wider north edge contains irrigated crops. The Kreifels have a crop lease with their neighbor farmer to the north, Marlin Brabec, for $4,800 annually. Brabec owns an irrigation pivot which crosses through the northwest corner of the Kreifels' lot.

In the spring of 2017, the Kreifels built an L-shaped, 32- by 16-foot pen on the east side of their property. The fenced pen is segmented into different portions, with one portion covered with a portable shed, another portion with a cement floor, and a third portion consisting of dirt. The Kreifels built the pen so their children can participate in the 4-H program "put on by the University of Nebraska Extension Office," which program allows the children to learn hard work and responsibility for animals and prepares them to eventually work in agriculture. Each year since 2017, the Kreifels have raised six or fewer pigs from the beginning of April through the end of August until the pigs are shown at county or state fairs and then sold. The pen is not used for commercial purposes and is not financially profitable for the Kreifels.

Since 2003, Dolezal-Soukup has owned the 10.03-acre, rectangle-shaped lot east of the Kreifels. Article 14 of the Dodge County zoning regulations covers A-3 agricultural-transitional districts. Section 1 of article 14 covers "Permitted Principal Uses," and subsection 1.9 covers "Private Kennels." For purposes of this dispute, the parties have stipulated that subsection 1.9 applies to the 4-H pen. Subsection 1.9 permits

- 66 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

the use of the pen provided that the pen is located at least 100 feet from the property line and 300 feet from any neighboring residence. The Kreifels' pen is located approximately 30 feet from the property line shared with Dolezal-Soukup, 200 feet from Dolezal-Soukup's residence, and 175 feet from the Kreifels' residence.

Dolezal-Soukup filed a complaint regarding the pen with the Dodge County zoning department. The Dodge County zoning administrator issued a letter to the Kreifels notifying them that their pen is sited in violation of county setback requirements. As a result, the Kreifels sought a variance from the Dodge County Board of Adjustment. The request stated that when the Kreifels built the pen, at a cost of $2,600, they were not aware of the setback requirements; that they thought the pen would not cause disruption, because it is not in view of any neighboring homes; that they kept the facility clean with regular power washing and changing of pig bedding; and that when they saw rain in the forecast, they closed off access to the dirt area to reduce any mess or odor. They estimated the cost of relocating the pen would be between $5,000 and $6,000, due to dirt, concrete, and fencing expenses.

The zoning administrator, on behalf of the board of adjustment, publicly notified all adjoining property owners that the board would hold a public hearing on September 21, 2017, to consider the Kreifels' request for a variance. Prior to the hearing, members of the board personally viewed the properties, reviewed photographs of the Kreifels' property taken by the zoning administrator, and considered a letter from Brabec which supported the Kreifels' request.

At the hearing, Joseph stated that the site for the pen was chosen with the best interests of the animals in mind and that if the pen were relocated to the west, there would be a lack of airflow due to the surrounding buildings. He stated that relocating the pen to the north would require altering the dirt on the cropland, which would cause water to run off from the Kreifels' buildings onto Brabec's property. Dolezal-Soukup

- 67 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

stated that the pen has an unpleasant smell, attracts flies, and has a metal self-feeder, which produces a constant banging noise.

Members of the board complimented the pen's cleanliness. At the close of the hearing, in a 5-0 decision, the board granted the variance. The board agreed that "there's not really a place on their property that they could put [the pen] without getting a variance." A form attached to the minutes for the hearing reflects that the board granted the variance "due to the drainage issues." The board specifically found that (1) strict application of the regulation would produce undue hardship; (2) such hardship is not shared by other properties in the same zoning district and vicinity; (3) authorizing the variance will not be a substantial detriment to adjacent property and will not change the character of the district; (4) granting the variance is based on demonstrable and exceptional hardship, as distinguished from convenience, profit, or caprice; and (5) the property and its intended use are not of a general or a recurring nature so as to make adopting an amendment to the general regulation reasonably practicable.

Dolezal-Soukup appealed the board's decision to the district court for Dodge County. Dolezal-Soukup alleged in her petition and amended petition that the decision of the board of adjustment was illegal, on the specific grounds that (1) the Kreifels would not have experienced exceptional hardship; (2) there are alternative locations for the pen on the property, making relocating the pen merely an inconvenience and financial burden, which would not merit a variance; (3) any hardship experienced by the Kreifels was not created by exceptional narrowness, shallowness, or shape of their property at the time of the adoption of the zoning regulations; and (4) authorizing a variance will be of substantial detriment to Dolezal-Soukup's adjacent property.

On September 4, 2019, at the hearing on Dolezal-Soukup's appeal, the court received exhibits and heard testimony from the zoning administrator, Dolezal-Soukup, Joseph, and Teri.

- 68 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

The zoning administrator described the pen as "a clean cement slab [with] fences around it, not a very big slab, not [a] very big pen." Dolezal-Soukup testified that she can smell the pigs from her house; that when the pigs eat, the metal self-feeder sounds like "a garbage can lid slamming down"; and that the pen has artificial lights, which cause the pigs to eat at night. On cross-examination, Dolezal-Soukup testified that she maintains five horses on her property year round, there is a tree line which separates the pen from her residence, and her property is bordered on the south by County Road O, near Highway 275.

The court heard testimony regarding two possible alternative locations for the pen. Joseph testified that neither alternative is workable. The first alternative is located in the cropland. Joseph testified that the farm ground "drains to the north and a little bit to the west." Due to the slope of the lot, relocating the pen would require moving significant dirt into the field, which would create drainage issues for Brabec's property, interfere with Brabec's irrigation pivot, limit crop production, and result in the termination of the crop lease.

The second alternative is located on the west side of the two steel sheds north of the Kreifels' residence. Joseph testified this location would require a variance due to the narrow dimensions of the lot; the pen would be located within 100 feet of the western property line. He stated that the sheds would limit airflow to the pigs and subject them to heat exposure due to the sun's reflection off the steel sheds and that the sheds would block the view of the pen from the family home, which would create safety concerns due to the inability to monitor the children as they tend to the 250-to-300-pound pigs.

Teri testified that neither the pig smell nor the feeding noise affect her family when they sleep with the windows open in the spring and summer. She explained that the lights are heating lamps, located inside the portable shed, used for a short period of time in the spring when the pigs are young. She has not noticed an inordinate amount of flies on her property since the installation of the pen.

- 69 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

Following the hearing, the court issued a written order affirming the board's decision to grant a variance. The court reviewed the testimony and exhibits and found that Dolezal-Soukup failed to submit any evidence to show that the board's decision was illegal or clearly wrong. The court cited the testimony of Joseph stating that there are no feasible alternative locations for the pen. The court found the location to the west of the steel sheds was not viable, because (1) that site would still require a variance, (2) the limited airflow and excessive heat at that location is dangerous to the health of pigs, and (3) the sheds block the view of the pen from the home creating a safety issue for the children. The court found the alternative site in the cropland would create "significant additional expense" for the Kreifels, including $6,000 in costs for relocating the pen and the annual loss of $4,800 due to termination of the lease. The court further found that this site would "require that additional dirt be brought on to the property and that the ground be re-graded to prevent water runoff problems, which could lead to further legal disputes and potential additional costs."

In concluding its order, the court stated that "[i]t is important to note that the [b]oard determined that a hardship specifically related to the shape of the Kreifels' parcel" and that "the variance was granted after a showing of exceptional hardship by the Kreifels and . . . was not based on convenience, profit, or caprice." The court found that based on the evidence and the relevant statutes and regulations, the board's decision to grant the variance was "reasonable and well considered and within the discretion of the [b]oard."

Dolezal-Soukup appeals. We moved the case to our docket on our own motion.

ASSIGNMENTS OF ERROR

Dolezal-Soukup assigns, restated and consolidated, that the district court erred in affirming the board of adjustment's decision to grant the variance, because (1) the Kreifels would not suffer an undue or exceptional hardship and (2) any such

- 70 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

hardship would have been shared by others in the same zoning district and vicinity. Dolezal-Soukup further assigns the court erred in failing to find that the Kreifels created their own hardship.

## STANDARD OF REVIEW

[1,2] A district court may disturb a decision of a board of adjustment if the decision was illegal or is not supported by the evidence and is thus arbitrary, unreasonable, or clearly wrong.[1] In deciding whether a board's decision is supported by the evidence, the district court shall consider any additional evidence it receives.[2]

[3,4] In appeals involving a decision of a board of adjustment, an appellate court reviews the decision of the district court, and irrespective of whether the district court took additional evidence, the appellate court is to decide if, in reviewing a decision of a board of adjustment, the district court abused its discretion or made an error of law.[3] Where competent evidence supports the district court's factual findings, an appellate court will not substitute its factual findings for those of the district court.[4]

## ANALYSIS

Dolezal-Soukup claims that the district court erred in affirming the board of adjustment's decision to grant the variance. Specifically, Dolezal-Soukup argues that under Neb. Rev. Stat. § 23-168.03 (Reissue 2012), the board erred in finding that strict application of the setback requirements would result in "peculiar and exceptional practical difficulties" "or exceptional and undue hardships" for the Kreifels.

---

[1] *Hanchera v. Board of Adjustment*, 269 Neb. 623, 694 N.W.2d 641 (2005).

[2] *Id.*

[3] *Id.*

[4] *Id.*

- 71 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

## Statutory Framework for County
## Board of Adjustment

Section 23-168.03(1)(c) authorizes a county board of adjustment to grant a variance from a zoning regulation only if strict application of the regulation, because of the exceptional narrowness, shallowness, or shape of the property existing at the time of the enactment of the regulation, would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardships upon, the owner.[5] Under § 23-168.03(1)(c), a variance is authorized only if such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of any zoning regulations. Additionally, under § 23-168.03(1)(c), no variance shall be authorized unless the board of adjustment finds:

(i) The strict application of the resolution would produce undue hardship; (ii) such hardship is not shared generally by other properties in the same zoning district and the same vicinity; (iii) the authorization of such variance will not be of substantial detriment to adjacent property and the character of the district will not be changed by the granting of the variance; and (iv) the granting of such variance is based upon reasons of demonstrable and exceptional hardship as distinguished from variations for purposes of convenience, profit or caprice.

Section 23-168.03(1)(c) requires the board to support any grant of a variance with evidence-based findings with respect to each of the four factors enumerated above. Section 23-168.03(1)(c)(iv) defines "undue burden" as "demonstrable and exceptional hardship as distinguished from variations for purposes of convenience, profit or caprice."[6] In addition,

---

[5] See, *Barrett v. City of Bellevue*, 242 Neb. 548, 495 N.W.2d 646 (1993) (interpreting prior version of Neb. Rev. Stat. § 19-910 (Reissue 2012 & Supp. 2019)); *Bowman v. City of York*, 240 Neb. 201, 482 N.W.2d 537 (1992) (same); *City of Battle Creek v. Madison Cty. Bd. of Adjust.*, 9 Neb. App. 223, 609 N.W.2d 706 (2000).

[6] See *Bowman, supra* note 5.

- 72 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

under § 23-168.03(2), a variance is not authorized unless the board finds that the condition or situation of the property concerned or the intended use of the property is not of so general or recurring a nature as to make reasonably practicable the formulation of a general regulation to be adopted as an amendment to the zoning regulations.

[5,6] Neb. Rev. Stat. § 23-168.04 (Reissue 2012) provides for an appeal from the board's decision to the district court on the ground that the decision is illegal. Section 23-168.04 requires the party appealing the board's decision to district court to "specify[] the grounds of the illegality." The Legislature's requirement that district courts are to uphold a board of adjustment's decision absent illegality makes clear that, when it comes to the determination of whether a landowner will experience sufficient hardship to justify a variance, the decision of a board of adjustment carries significant weight. As this court stated in *Bowman v. City of York*,[7] boards of adjustment provide

> "a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the legislature, to make rules and enforce them in fashioning solutions to very complex problems. Thus, their decisions are not to be taken lightly or minimized by the judiciary."

## Undue Hardship

[7] Dolezal-Soukup contends that strict application of the setback requirements would not result in undue hardship to the Kreifels, because the Kreifels merely desire to have a 4-H pen on their land and to avoid the costs of removing and reconstructing the pen in a location that does not violate

---

[7] *Id.* at 210, 482 N.W.2d at 544. See, also, *Eastroads v. Omaha Zoning Bd. of Appeals*, 261 Neb. 969, 628 N.W.2d 677 (2001); *Rousseau v. Zoning Bd. of Appeals of Omaha*, 17 Neb. App. 469, 764 N.W.2d 130 (2009).

- 73 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

the zoning setback requirements. She argues that because the pen could have been constructed in an alternative location, the only hardship would be financial in nature. The financial situation or pecuniary hardship of a single owner affords no adequate grounds for granting a variance from a zoning regulation.[8]

In this court's 1955 decision in *Frank v. Russell*,[9] property owners sought a variance after commencing construction of a residential building in violation of a zoning ordinance. Because the owners' building was designed to set back 27 feet from the front lot line, rather than the required 40 feet, the city engineer halted the construction. Pursuant to § 19-910, which defines the authority of boards of adjustment in cities of the first and second class and villages to grant a variance, the owners filed a petition for a variance with the city board of adjustment. The board granted a variance, and the district court affirmed.

On appeal in *Frank*, we analyzed the five factors under the ordinance required for a variance, which were that the variation (1) must be minor, (2) may not violate the spirit of the ordinance, (3) may not interfere with public safety or welfare, (4) may not abridge substantial justice, and (5) must relieve practical difficulties or unnecessary hardships. We found that the owner's 13-foot encroachment on the otherwise symmetrical residential block failed to satisfy any of these factors. Our analysis concentrated on the fifth factor. We acknowledged that denying the variance did involve hardship and practical difficulties to the owners. But we found that the owners had created these hardships and difficulties with full knowledge of the ordinance and that it would be unreasonable "to allow one to create his own hardship and difficulty and take advantage of it to the prejudice of innocent parties."[10]

---

[8] See, *Bowman, supra* note 5; *Rousseau, supra* note 7.

[9] *Frank v. Russell*, 160 Neb. 354, 70 N.W.2d 306 (1955).

[10] *Id*. at 361, 70 N.W.2d at 311.

- 74 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

On the subject of hardship generally, we stated: "'Ordinarily, a claim of unnecessary hardship cannot be based upon conditions created by the owner or applicant.' . . . 'A hardship intentionally created by the owner of premises for the purpose of laying a basis for an application for a variance cannot be considered for such purpose.'"[11] We concluded that under the circumstances, the board of adjustment lacked authority to grant the variance, and we reversed. Subsequent to *Frank*, the Legislature amended § 19-910 to enumerate specific criteria which must be satisfied to sustain a request for a variance.[12]

In our 1992 decision in *Bowman*, we considered whether, under § 19-910, a board of adjustment had the power to grant a variance to a company which sought authorization to build a warehouse within 1 foot of the property line rather than the 15 feet required by the ordinance.[13] The board granted the variance, but the district court reversed. We analyzed the requirement of § 19-910(2)(d) that describes undue hardship as a "demonstrable and exceptional hardship as distinguished from variations for purposes of convenience, profit, or caprice." We found that because the record showed that the company's sole justification for the variance was to maximize its profits, the company had failed to establish that strict application of the setback requirement would have produced undue hardship. Thus, the company failed to set forth adequate grounds for a variance.

*Eastroads v. Omaha Zoning Bd. of Appeals*[14] concerned the application of *Frank*[15] in the context of Neb. Rev. Stat. § 14-411 (Reissue 2012), which defines the authority of zoning

---

[11] *Id.* at 361-62, 70 N.W.2d at 311, quoting Annot., 168 A.L.R. 13 (1947).

[12] See, § 19-910(2) (substantively similar to § 23-168.03(1)(c)); *Bowman, supra* note 5.

[13] *Bowman, supra* note 5.

[14] *Eastroads, supra* note 7.

[15] *Frank, supra* note 9.

- 75 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

boards of appeal in cities of the metropolitan class to grant a variance. In *Eastroads*, a company requested the city zoning board of appeals to waive application of an ordinance requiring a 30-foot bufferyard area between commercial-zoned and residential-zoned lands. The company presented evidence to the board showing that the variance was needed due to the irregular shape of the property line, the location of an old rubble fill site in the center of the land, and the need for an entry point on the north end of the development due to a state-owned right-of-way on the south end. The board granted the variance.

Following an appeal, the district court held an evidentiary hearing and affirmed the board's decision. The court found that the board's decision to grant the variance was supported by the following factors: (1) the rubble fill is on the majority of the property; (2) the state controlled right-of-way, which was acquired after the company purchased the property, "'forecloses the possibility of any reasonable development in this area'";[16] and (3) the required bufferyard was uniquely increased due to the irregular boundary line.

The company appealed to the Nebraska Court of Appeals, which pursuant to *Frank*[17] reversed, finding that the difficulties asserted to justify the variance were self-created.[18] Upon a petition for further review, we reversed the decision of the Court of Appeals and found that the board had acted legally in granting the variance.[19] We held *Frank* was distinguishable, because there was no evidence that the state's right-of-way was a condition created by the property owner and that further, the state's right-of-way created a practical difficulty in the strict application of the ordinance. We found the language

---

[16] *Eastroads*, 261 Neb. at 974, 628 N.W.2d at 681.

[17] *Frank, supra* note 9.

[18] *Eastroads v. Omaha Zoning Bd. of Appeals*, 9 Neb. App. 767, 619 N.W.2d 618 (2000), *reversed, Eastroads, supra* note 7.

[19] *Eastroads, supra* note 7.

- 76 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

from *Frank* regarding hardship generally to be dicta and to not establish an absolute bar to a request for a variance.

These Supreme Court authorities provide instruction in identifying what qualifies as undue hardship. The Court of Appeals' 2009 decision in *Rousseau v. Zoning Bd. of Appeals of Omaha*[20] provides additional guidance. In that case, a property owner had purchased a vacant lot in a residential area. The owner wanted to build a condominium designed in an old style like those found in Chicago or New York. After redesigning the project 11 times, attempting to comply with zoning regulations, the owner sought variances from front yard setback and off-street parking requirements. The board granted the owner's requests, and it also granted a variance from a side yard setback requirement. After an appeal, the matter was tried in district court. The owner provided testimony admitting that it was possible to build a multiple-family residential building on the lot in compliance with zoning regulations, but contended that the regulations prohibited her from building the particular style of building that she desired to build. The court affirmed, finding that no variance from the front yard setback requirements was necessary and that the "density of the neighborhood"[21] was a hardship that justified the side yard setback and parking space variances.

On appeal, the Court of Appeals acknowledged that, standing alone, neither the desire to build a larger building[22] nor the desire to generate increased profits[23] constitutes a sufficient hardship to justify a variance. However, the court found that the particular form of hardship at issue, where the density of an already existing development conflicts with strict application of local zoning requirements, was sufficient to justify a

---

[20] *Rousseau, supra* note 7.

[21] *Id*. at 472, 764 N.W.2d at 132.

[22] *Rousseau, supra* note 7, citing *Alumni Control Board v. City of Lincoln*, 179 Neb. 194, 137 N.W.2d 800 (1965).

[23] *Id*., citing *Bowman, supra* note 5.

- 77 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

variance. Thus, it was not the owner's desire to build a particular style of building, but, rather, the density of the area which qualified as undue hardship.

We now turn to apply the foregoing principles to the present dispute. Here, in a unanimous decision, the board of adjustment found that the Kreifels' request for a variance was meritorious. The board supported its decision with factual findings with respect to all factors required under § 23-168.03(1)(c) and (2). We are convinced that the evidence establishes that the board of adjustment and the district court correctly found that strict application of the zoning regulations would result in undue hardship to the Kreifels. The board members applied their expertise and specialization by personally viewing the property at issue, reviewing photographs of the pen, considering a letter in support of the Kreifels' request authored by an adjoining landowner, and questioning the landowners and an adjoining landowner. The board considered the request for a variance in the context of the specific dimensions of the properties, and it carefully evaluated the proposed alternative locations. The board concluded, based on the evidence and the required statutory considerations, that due to the narrowness and shape of the Kreifels' property, strict application of the setback requirements would cause the Kreifels undue and exceptional hardships.

Specifically, the board found the property contains no viable alternative site for the pen. The only alternative that did not require a variance would create drainage issues for neighboring property. The district court affirmed, because the board found that the hardship related to the shape of the Kreifels' parcel. And, contrary to Dolezal-Soukup's position on appeal, the court found that "the granting of the variance was not based on convenience, profit, or caprice." The factual findings of the board and the district court carry significant weight.[24]

---

[24] See, *Eastroads, supra* note 7; *Bowman, supra* note 5; *Rousseau, supra* note 7.

- 78 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

Analyzing the feasibility of alternative pen locations illustrates the persuasiveness of the findings of the board and the district court regarding undue hardship. When the zoning regulations are strictly applied, it is clear the location west of the sheds is no alternative. That location requires a variance on the western line, and furthermore, it poses the peculiar and exceptional practical difficulties of harming the swine due to lack of airflow and heat exhaustion, which would defeat the purpose of a permitted principal use of the property.

The alternative location in the farm ground is not viable. The Kreifels' land is flat in the south with a downgrade to the north and west into the farm ground. Joseph testified that due to the conditions of the land, relocating the pen to this site would cause water from the Kreifels' buildings to run off onto the Brabec property. Constructing a new pen in this area would require significant dirt work, which would reduce the land's crop production and interfere with Brabec's irrigation pivot and farming operations.

[8,9] In response to the evidence that the Kreifels' would incur costs from demolition and reconstruction of the pen, and lose farming income, Dolezal-Soukup argues on appeal that purely financial hardships are inadequate grounds for a variance. It is true that, as a general rule, hardship that is personal to the property owner will not support the grant of a variance.[25] The applicant for a variance must show that the property is in and of itself unusual in a manner which is different from the nature of surrounding properties and relates to the hardship complained of and that granting a variance to

---

[25] 2 Patricia E. Salkin, American Law. of Zoning § 13:15 (5th ed. 2018), citing *Matter of First Natl. Bank of Downsville v. City of Albany Bd. of Zoning Appeals*, 216 A.D.2d 680, 628 N.Y.S.2d 199 (1995); *Matter of Congregation Beth El of Rochester v. Crowley*, 30 Misc. 2d 90, 217 N.Y.S.2d 937 (1961); *Williams v. Dept. of Env. and Natural Res.*, 144 N.C. App. 479, 548 S.E.2d 793 (2001) (superseded by statute as stated in *The Riggings v. Coastal Resources Com'n*, 228 N.C. App. 630, 747 S.E.2d 301 (2013)).

- 79 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

take this into account would not substantially affect the zoning plan.[26]

The premise of Dolezal-Soukup's argument has merit. Standing alone, neither the desire to build a larger building nor the desire to generate increased profits constitutes a sufficient hardship to justify a variance from a zoning regulation.[27] However, when applied to the facts of this case, Dolezal-Soukup's argument fails. Unlike the request for a variance in *Bowman*,[28] the Kreifels' request for a variance is not solely based on personal or financial considerations. And the fact that the Kreifels have proved that strict application of the regulations would cause them financial losses does not forfeit them the opportunity to establish that they would experience undue hardship as a result of the conditions of their property.

Dolezal-Soukup's lead authority, *Bruning v. City of Omaha Zoning Bd. of Appeals*,[29] is distinguishable from the present matter. In *Bruning*, property owners had operated seeding businesses on land zoned for agricultural use. The owners sold their seeding businesses and rented buildings on the land to be used for storage for lawn and landscaping businesses, and they leased other buildings for automobile storage and boiler repair businesses. The landowners requested a variance for their agricultural-zoned land, and the city zoning board of appeals denied the request. The board members found that "granting waivers would be a significant deviation from the

---

[26] 131 Am. Jur. Proof of Facts 3d 253 *Proof of Hardship Necessary for Zoning Variance* § 16 (2013), citing *Montgomery County v. Rotwein*, 169 Md. App. 716, 906 A.2d 959 (2006). See, e.g., *Barrett, supra* note 5; *Lang v. Zoning Board of Adjustment*, 160 N.J. 41, 733 A.2d 464 (1999); *Allegheny West Civic Council v. Zoning Bd.*, 547 Pa. 163, 689 A.2d 225 (1997).

[27] *Rousseau, supra* note 7.

[28] *Bowman, supra* note 5.

[29] *Bruning v. City of Omaha Zoning Bd. of Appeals*, 303 Neb. 146, 927 N.W.2d 366 (2019).

- 80 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

zoning plan, and not merely reasonable adjustments."[30] The district court affirmed, finding that the property owners had unilaterally altered the agricultural use of the property by leasing buildings to others, a commercial activity. On appeal, the Supreme Court affirmed, finding competent evidence in the record to support the district court's conclusion that the property owners' hardship stemmed from their desire for increased profits and self-created hardships.

The Kreifels' request for a variance is much different than that at issue in *Bruning*. The pen is a permitted principal use in the A-3 agricultural-transitional zoning district. The Kreifels constructed the pen absent knowledge of the zoning requirements, and they did not intend to use the pen for financial profit. When the Kreifels' purchased the lot, the steel sheds and residence were already located in the narrow, south corner. The zoning administrator testified that the pen is not very big, yet the board found, due to the narrowness or shape of the lot, that there is no feasible location for the pen that would comply with the zoning requirements. Therefore, under the requirements of § 23-168.03(1)(c), the Kreifels have demonstrated undue hardship to justify a variance.

Dolezal-Soukup argues there is no legally cognizable hardship, because the Kreifels have not been deprived of all beneficial or reasonable use of their land. However, § 23-168.03(1)(c) contains no such requirement. It is a misconception that the term "undue hardship" requires an applicant to prove that without the variance, the property would lose all utility.[31] Sufficient proof of hardship is established if strict enforcement of regulations, due to the property's unique characteristics, inhibits the extent to which the property can be used.[32] Here, strict application of the setback requirements, due to the

---

[30] *Id*. at 153, 927 N.W.2d at 371.

[31] *Lang, supra* note 26.

[32] *Id*.

- 81 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

narrowness of the land, in combination with preexisting structures, eliminates all use of the pen.

Our review in this case is limited to whether the district court abused its discretion or committed an error of law in affirming the board's decision to grant the variance. After conducting an evidentiary hearing, the court found that Dolezal-Soukup presented no evidence to establish that the board's decision was clearly wrong, illegal, unreasonable, or arbitrary. Based upon our review of the record, with respect to the issue of undue hardship, we conclude there is competent evidence in the record to support the district court's factual findings. We will not substitute our factual findings for those of the district court.

### Hardship Not Self-Created

[10] Dolezal-Soukup next argues that the Kreifels are barred from seeking a variance, because their hardships were self-created. Dolezal-Soukup relies on the rule against self-created hardships from *Bruning* and *Frank*, discussed above.[33] However, Dolezal-Soukup applies this rule out of context. Both *Bruning* and *Frank* involved applicants which sought variances while intentionally violating zoning regulations. As stated in one of the passages from *Frank*, quoted above, "'A hardship intentionally created by the owner of premises for the purpose of laying a basis for an application for a variance cannot be considered for such purpose.'"[34] A self-imposed hardship exists where a party comes to the restricted subject property with a particular unpermitted use in mind and mindful of the impossible area restrictions for that use.[35] By contrast, a hardship is not self-imposed if it results from inherent and preexisting characteristics of the property.[36]

---

[33] See, *Bruning, supra* note 29; *Frank, supra* note 9.

[34] *Frank, supra* note 9, 160 Neb. at 362, 70 N.W.2d at 311.

[35] *Bd. of Adjustment of Sussex v. Verleysen*, 36 A.3d 326 (Del. 2012).

[36] *Id.*

- 82 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

[11] Dolezal-Soukup's self-created hardship argument is not based on any intentional violation by the Kreifels. Rather, Dolezal-Soukup attempts to impute an intent to the Kreifels by arguing that they "had a legal duty to know the zoning requirements and to follow them."[37] Dolezal-Soukup's argument is fundamentally flawed for two reasons. First, a self-imposed hardship is not a per se bar to a variance.[38] Rather, a self-imposed hardship is a factor for the regulatory authority to consider when deciding whether or not to grant the variance.[39] Second, Dolezal-Soukup's argument is not properly raised. Section 23-168.04 requires the party appealing the board's decision to district court to "specify[] the grounds of the illegality." Nowhere in her petition or amended petition filed with the district court did Dolezal-Soukup allege the Kreifels' hardships were self-created. While the bill of exceptions does show that Joseph admitted he installed the pen without first obtaining a building permit, he stated he did so because he was not aware of the zoning requirements. The district court's written order made no findings with respect to the issue of self-created hardships. This argument is being applied out of context, overstates its legal impact, and was not properly raised. This assignment of error is without merit.

## Hardship Not Generally Shared by Others in Area

Dolezal-Soukup's next argument is, if the Kreifels' alleged hardship is an inability to construct a pen for 4-H activities, then, contrary to the requirements of § 23-168.03(1)(c)(ii), that is a hardship that can be shared generally by other properties in the same zoning district and vicinity. However,

---

[37] Brief for appellant at 17.

[38] See, *Eastroads, supra* note 7; *Rousseau, supra* note 7; *Verleysen, supra* note 35.

[39] See, *Eastroads, supra* note 7; *Rousseau, supra* note 7; *CCS Investors, LLC v. Brown*, 977 A.2d 301 (Del. 2009).

- 83 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
DOLEZAL-SOUKUP v. DODGE CTY. BD. OF ADJUSTMENT
Cite as 308 Neb. 63

as discussed, the hardship in this case is not personal to the Kreifels. The Kreifels' hardship is that, due to the narrowness and shape of their property, in combination with the placement of preexisting structures, there is no other location on their property to site the pen, which is a permitted principal use. There is no evidence that this hardship is shared generally by other properties in the area. This assignment of error is without merit.

## CONCLUSION

The Kreifels' variance is based on, within the meaning of § 23-168.03(1)(c), peculiar and exceptional practical difficulties or exceptional and undue hardships. The district court did not abuse its discretion or make an error of law in determining that the narrowness or shape of the Kreifels' property resulted in sufficient hardship to justify upholding the board's decision to grant the variance.

AFFIRMED.